251 So.2d 801 (1971)
Elias LEGER, for and on behalf of his minor daughter, Jackie Leger, Plaintiff Appellant,
v.
SOUTHERN FARM BUREAU CASUALTY INSURANCE COMPANY and John E. Richard, Defendants (not involved in this appeal),
Shell Oil Company, Defendant Appellee.
No. 3541.
Court of Appeal of Louisiana, Third Circuit.
August 20, 1971.
*802 Cormie & Morgan by Robert E. Morgan, Lake Charles, for plaintiff-appellant.
Plauché, Sanders, Smith & Hebert by Thomas W. Sanders, Holt & Woodley by Meredith T. Holt, Lake Charles, for defendant-appellee.
Before FRUGÉ, MILLER and DOMENGEAUX, JJ.
MILLER, Judge.
This is a companion case to Leger v. Southern Farm Bureau Casualty Insurance Company et al., 251 So.2d 805 (La.App. 3 Cir. 1971), in which a separate decree is being handed down this date.
Defendant Shell Oil Company was awarded summary judgments in both cases holding that their employee, defendant John E. Richard, was not in the course and scope of this employment with Shell when Richard allegedly caused an accident. We reverse and remand.
The accident occurred at approximately 2:40 p. m. on Sunday, December 14, 1969 at the intersection of Louisiana Highway 14 and Fruge Road in Calcasieu Parish, Louisiana. John E. Richard was driving north on Fruge Road. He ran a stop sign and struck the eastbound Leger Volkswagen Van.
The Legers filed suits against John E. Richard and his insurer Southern Farm Bureau Casualty Insurance Company. After Richard's discovery deposition was taken, plaintiffs amended to add as party defendant, Shell Oil Company, Richard's employer.
*803 Shell Oil Company filed motions for summary judgment, contending that defendant Richard was not acting within the course and scope of his employment with Shell at the time of the accident. The trial judge granted the summary judgments and dismissed plaintiffs' suits against Shell Oil Company. Plaintiffs appealed devolutively.
The deposition of defendant Richard and affidavits and answers to interrogatories by Shell's employees indicate that there is a dispute concerning the facts relating to whether or not Richard's travel to and from Shell's operations at Chalkley was in the course and scope of Shell's employment.
As of December 14, 1969, the date of this accident, Richard lived in Roanoke, Louisiana and had been working for Shell for almost thirty-two years. He worked out of Shell's office in Iowa, Louisiana, as a gauger or relief lease operator. He was not paid travel expenses or travel time for the one day each week he worked near Iowa, Louisiana.
Richard worked two days each week at Chalkley, which is southeast of Holmwood, and two days each week at King's Bayou, which is southwest of Creole. He usually reported to work at 7 a. m. and his work day ended at 3 p.m. Richard testified that he automatically received pay for eight hours each day and that he did not turn in his time unless he worked overtime. But in this instance, he notified Shell on the day after the accident that he had left early and he was docked 30 minutes pay for December 14.
On the days Richard worked at Chalkley and King's Bayou, he received pay for one and one-half hours at his regular hourly rate in addition to his regular eight hours. By affidavit it was explained by Shell's Onshore Division Employee Relations Manager that Richard received "* * * pay for travel to and from work in his private vehicle under a policy of Shell Oil Company that provides payment for such travel time; that travel time was paid separate and apart from wages earned by John E. Richard on December 14, 1969; that wages are computed on the basis of an hourly rate times hours worked; that travel time is an inconvenience payment for an employee who is required to travel an excessive distance from his residence to his work location, and is paid for at the employee's regular rate of pay." Tr. 62.
Richard testified that he left his Chalkley field work in his own pickup truck at 2 p. m. rather than at his scheduled time of 3 p. m. because he had a slight headache. Shell's records indicate that he worked until 2:30 p. m.
Plaintiffs contend that even if Richard's work at Chalkley field terminated at 2 p. m. as testified by Richard, or at 2:30 as indicated by records amended by Shell on the day following the accident, Richard was being paid at his regular hourly rate for forty-five minutes while returning to his home from the Chalkley field.
Plaintiff further argues that the Chalkley field is located in an extremely sparsely populated area where no immediately available labor source is to be had; that a two day a week job is highly undesirable and would be difficult to fill; that Shell is saving money by combining gauging in this field with other fields on a part time basis; and that the payment of travel time benefits Shell. Plaintiff also contends that Richard was engaged at the time of the accident in the exercise of functions for which he was employed, because he was employed to travel to and from Chalkley field and to do certain work at the field, and he was paid for both travel and work.
Defendant Shell contends that Richard was not in the course and scope of his employment because he was going to his home in his private vehicle; that his work day ended at 2:30 p. m. on the day of the accident; that travel time was paid as an "inconvenience payment" and was over and above the pay for his normal working *804 hours; that Richard was not "about the employer's business"; and that Richard was not under the supervision, direction and control of Shell at the time of this accident.
The doctrine of respondeat superior is set forth in LSA-C.C. Arts. 176, 2317 and 2320, the latter of which states that
"* * * employers are answerable for the damage occasioned by their servants and overseers, in the exercise of the functions in which they are employed."
There is no precise rule or definition by which we can determine in every instance whether the employee driver of a motor vehicle is acting within the scope of his employment. Each case must be decided largely on its own facts, keeping in mind the basic idea that the use of the vehicle at the time must have been in the service of the employer or while about the employer's business. Rollins v. New York Fire & Marine Underwriters, Inc., 225 So.2d 663, at 670 (La.App. 3 Cir. 1969).
The general rule is that an employee, in going to and from his place of employment, is not considered as acting within the scope of his employment to such an extent as to render his employer liable to third persons for the employee's negligent acts. Wills v. Correge, 148 So.2d 822, at 824 (La.App. 4 Cir. 1963).
Defendant Shell contends that both of the above cited cases and the case of Gallaher v. Ricketts, 191 So. 713 (La.App. Orls.1939) support the trial court's decision.
We distinguish those cases. In Rollins, the employee was not entitled to travel time or travel expenses back to his home city. However, even assuming he was entitled to travel expenses, those contemplated were only bus fare and travel time, and the use of the employee's car was for the convenience of the employee and did not benefit the employer. 225 So.2d 663, at 671.
In Wills, the employee received no mileage allowance or reimbursement for travel expenses. 148 So.2d 822, at 824.
In Gallaher, the employee received $5 per week to assist him with delivery of newspapers. The accident did not occur while the employee was delivering newspapers, but rather while he was on his way to attend a meeting. It was held that "the automobile was identified solely with the delivery of * * * newspapers." 191 So. 713, at 716.
More applicable here is the decision in O'Brien v. Traders and General Insurance Company, 136 So.2d 852 (La.App. 1 Cir. 1961). There the employee was acting within the scope of his employment where the employee was a county agent, who, on the weekend, was driving his own automobile from his home to the site of a meeting which his employer required him to attend, and where the employee was allowed mileage for the trip. It was held that where the employee is being compensated by his employer for the mileage, and at the time of the accident the employee is on a mission contemplated by employer and employee for which the employee is to be compensated, the employee is within the scope of his employment. 136 So.2d 852, at 864.
A motion for summary judgment can only be sustained where "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law." LSA-C.C.P. Art. 966.
The summary judgment remedy is not a substitute for a trial and may not be resorted to when there is a genuine issue of material fact which must be resolved. In passing upon a motion for summary judgment, the function of the court is not to determine the merits of the issues raised, but rather only to determine whether or not there is a genuine issue of material fact. To obtain a summary judgment it is not sufficient to prove *805 that it is unlikely that plaintiff may recover, nor that the showing then made preponderantly indicates there is no liability. The burden of showing that there is not a material factual issue is upon the mover for summary judgment. All doubts are to be resolved against the granting of a summary judgment and in favor of a trial on the merits to resolve disputed facts. Roy & Roy v. Riddle, 187 So.2d 492, 494 (La.App. 3 Cir. 1966); Frazier v. Missouri Pacific Railroad Company, 224 So.2d 179 (La.App. 3 Cir. 1969).
There is a dispute concerning the material issue of whether or not Richard was in the course and scope of his employment with Shell Oil Company when the accident occurred. Plaintiffs are entitled to present this issue to the jury.
The judgment sustaining the motion for summary judgment is reversed. The case is remanded to the trial court for further proceedings. Costs of this appeal are assessed to Shell Oil Company.
Reversed and remanded.