280 So.2d 504 (1973)
John SCHAFFER, Appellant,
v.
GOVERNMENT EMPLOYEES INSURANCE COMPANY et al., Appellees. Glen Johnson, Appellant,
v.
John Schaffer et al., Appellees.
Nos. 71-651, 71-663.
District Court of Appeal of Florida, Second District.
May 23, 1973.
Rehearing Denied July 20, 1973.
J.C. Cheatwood, Sidwell, Cheatwood & Smith, Tampa, for John Schaffer.
Gary M. Witters, Allen, Dell, Frank & Trinkle, Tampa, for Glen Johnson.
*505 F. Ronald Fraley, and Grover Freeman, Shackleford, Farrior, Stallings & Evans, Tampa, for Government Employees Ins. Co.
Barry M. Salzman, Ulmer, Woodworth & Jacobs, St. Petersburg, for St. Paul Mercury Ins. Co.
MANN, Chief Judge.
Doctor Valadie's car was driven by "a person ... engaged in the automobile business" within the meaning of his policy, but Johnson, the driver, was not such a person within the meaning of his policy. This is the only common sense result we can arrive at by interpreting the language of this common exclusion in the light of what each insurance carrier undertook to insure against. Perhaps an analysis of policy language in the abstract would lead one to the conclusion that this result is inconsistent, but we believe, with Karl Llewellyn, that "a court must strive to make sense as a whole out of our law as a whole."[1] The facts will show why we approach the task of interpretation in this manner.
Schaffer ran a service station in Temple Terrace. Doctor Valadie's office is nearby, and one day he called and asked Schaffer to pick up his car for servicing. Johnson, a friend and customer of Schaffer's was at the station at the time, and Schaffer asked him to go along and drive Valadie's car back. He obliged. As Schaffer was guiding Johnson into the service bay, something went awry, and Schaffer was pinned between the bumper of Valadie's car and that of a parked vehicle. He lost his leg.
St. Paul Mercury Insurance Company is Valadie's insurer. Its policy contains the standard exclusion of use by a person engaged in the automobile business. Viewed from Valadie's standpoint, he turned the car over to Schaffer. Johnson did not enter Valadie's office. Schaffer went in to get the key, and Valadie is to be considered as having entrusted the car to one regularly engaged in the automobile business, as defined in the policy. Valadie himself is not liable for his bailee's negligence[2] and there is every reason to suppose that the policy exclusion is meant to effectuate a change in coverage at the moment of bailment.
Johnson, on the other hand, is covered by Government Employees Insurance Company when he drives a non-owned automobile, except where that car is used by a "person employed or otherwise engaged in the automobile business." The clear purpose of this exclusion is to except from coverage that which the insured might reasonably expect to require a garagemen's liability policy for. In short, if Johnson were regularly employed in the automobile business, the provision of liability coverage would be related to that business, and his personal insurance would not be expected to apply. But Johnson was not employed in the business, nor was he more than casually engaged in it. He was merely performing a service as an accommodation to his friend Schaffer. Nothing in the sense of the situation would put a reasonable person on notice that he was undertaking something which would leave him personally liable and his insurer exempt.
Our decision is consonant with what is said to be the purpose of the exclusion, and with what we think it obviously is. Appleman says that "a limitation is applied to the coverage of the omnibus policy so as not to extend coverage over to a service station, public garage, sales agency, repair shop, or public parking place, even though such establishment has rightful custody of *506 the vehicle during its operation, maintenance, or use by an employee thereof. This does not mean that the named insured is not protected if liability should be imposed upon him while the vehicle is being so used; but it prevents the insurer from becoming liable by reason of judgments recovered against such an establishment."[3] (emphasis supplied)
An earlier form of the exclusion exempted the insurer if the automobile were used in the automobile business. This form was widely construed as ambiguous, and led to holdings of coverage where the vehicle was clearly committed to the custody of a garageman.[4] The present form specifies use by a person engaged in the automobile business, and decisions under it are recognizing the common sense approach to the exclusion.[5] Its main purpose is to set a point at which the transfer of coverage from the owner's insurer to the garageman's is normally expected. With regard to coverage for the named insured when driving a non-owned vehicle, it provides a means whereby the person regularly employed in the business would normally look to the garageman's policy, or, if a garageman himself, would think it prudent to buy coverage. One in Johnson's position would reasonably think himself protected, and we hold that he, a casual helper of a garageman, is.
Recently, in Craine v. Gee, Fla.App., 276 So.2d 521, opinion filed April 25, 1973, we held the exclusion effective in a case in which the driver was regularly, though only on a part-time basis, employed by a car rental firm and had an accident in the course of that employment. Apparently Allstate Insurance Co. v. Van Jordan, Fla. App.3d 1972, 266 So.2d 680, interpreted the older form of the exclusion, and we do not view it as contrary authority. Compare the cases cited in Annotation, 47 A.L.R. 556, with a later annotation, 71 A.L.R. 964, noting the change in wording of the exclusion. At the present time, quotations from works on insurance law should perhaps be used with care, since some cases relied on may date from the time courts were inclined to hold the exclusion inoperative. There is a definite trend toward giving effect to the exclusion where there is a common sense expectation that coverage has shifted to the garageman's carrier.[6]
In this case, interpretation of language of the policy in the abstract led the trial judge to grant summary judgment for the insurers in both cases. We think that granted in favor of Valadie's insurer, which had the expectation of transfer of liability, was correct, and affirm. That granted in favor of Johnson's insurer having the effect of leaving him without protection we think his carrier contracted for, was erroneous, and we reverse.
HOBSON and McNULTY, JJ., concur.

ON PETITION FOR REHEARING
Government Employees Insurance Company has failed a petition for rehearing asserting *507 that our opinion is predicated upon an oversight and mistake in fact, and that we assumed Schaffer did not have garagemen's liability coverage. We were well aware that Schaffer's carrier is a party to the action, and it will be pertinent to argue in the trial court the question of primary and secondary liability. Certainly the petitioner has shown no authority for the proposition that because Schaffer has coverage, Johnson has none. Suppose Schaffer had not purchased garagemen's liability. Would Johnson's policy protect him solely because Schaffer hadn't bought insurance? Plainly not. Nothing in the standard policy suggests this result. In short, GEICO is arguing prematurely a question which will arise in the fullness of time, and we adhere to our opinion.
Rehearing denied.
NOTES
[1] Remarks on the Theory of Appellate Decision, 3 Vand.L.R. 395, 397 (1950).
[2] Patrick v. Faircloth Buick Co., Fla.App.2d 1966, 185 So.2d 522; Fry v. Robbinson Printers, Inc., Fla.App.2d 1963, 155 So.2d 645; White v. Holmes, 1925, 89 Fla. 251, 103 So. 623.
[3] 7 Appleman, Insurance Law and Practice § 4372 (1962).
[4] Wilks v. Allstate Ins. Co., La. App. 1965, 177 So.2d 790; Hammer v. Malkerson Motors Inc., 1964, 269 Minn. 563, 132 N.W.2d 174; Truck Ins. Exchange v. State Farm Mutual Automobile Ins. Co., 1967, 182 Neb. 330, 154 N.W.2d 524; LeFelt v. Nasarow, 1962, 71 N.J. Super. 538, 177 A.2d 315; Case v. Fidelity and Casualty Co. of New York, 1964, 105 N.H. 422, 201 A.2d 897; Allstate Ins. Co. v. Universal Underwriters Ins. Co., Tex.Civ. App. 1969, 439 S.W.2d 385; Christensen v. Farmers Ins. Exchange, 1968, 21 Utah 2d 194, 443 P.2d 385; McCree v. Jenning, 1960, 55 Wash.2d 725, 349 P.2d 1071.
[5] Rosen v. Godson, 5th Cir.1970, 422 F.2d 1082; Dumas v. Hartford Accident and Indemnity, La. App. 1965, 181 So.2d 841; Tindall Pontiac, Inc. v. Liberty Mutual Ins. Co., Tex.Civ.App. 1969, 441 S.W.2d 948.
[6] See, e.g. 13 Couch, Insurance 2d §§ 45:971 et seq. Sanders v. Liberty Mutual Ins. Co., 5th Cir.1965, 354 F.2d 777; Universal Underwriters Ins. Co. v. Northwestern National Ins. Co., S.D.Ill. 1969, 306 F. Supp. 437.