**Luther T. ROUSE, as Administrator of the Estate of Jeptha L. Cobb, and Volkswagen Insurance Co., Plaintiffs-Appellees,**

v.

**GREYHOUND RENT-A-CAR, INC., et al., Defendants-Appellees-Cross-Appellants, Lakeland Automobile Auction, Inc., et al., Defendants-Appellants.**

No. 73-4007.

United States Court of Appeals, Fifth Circuit.

Jan. 13, 1975.
Rehearing Denied Feb. 13, 1975.

James W. Smith, Daytona Beach, Fla., for Lakeland Auto.

Roland A. Sutcliffe, Jr., George T. Eidson, Jr., Orlando, Fla., for Volkswagen Ins. Co.

Thomas L. Clarke, Jr., Robert L. Trohn, Lakeland, Fla., for Old Republic Ins. Co.

Before DYER, SIMPSON and CLARK, Circuit Judges.

CLARK, Circuit Judge:

The narrow question presented by this action for declaratory judgment is which of the insurance carriers must bear the loss for monies paid in settlement of tort claims arising from an automobile accident. Jurisdiction is based upon diversity of citizenship. Based upon an analysis of the particular fact situation existing at the time of the accident, the district court held that both the owner and the bailee of the vehicle at fault must be treated as "joint" owners and, therefore, that the carrier for the owner and the carrier for the bailee were jointly primarily liable for the payment of damages to the injured third parties and should divide the payment in the proportion the applicable policy limit of each bore to the aggregate of the applicable policy limits of both. We reverse.

The plaintiffs are Luther T. Rouse, a Georgia citizen, as Administrator of the Estate of Jeptha L. Cobb, deceased, and Cobb's insurer, Volkswagen Insurance Company (Volkswagen), a Missouri Corporation. The defendants are Greyhound Rent-A-Car, Inc. (Greyhound), a Florida Corporation, and its insurer, Old Republic Insurance Company (Old Republic), a Pennsylvania Corporation; and Manheim Services Corporation (Manheim), a Delaware Corporation, its subsidiary, Lakeland Automobile Auction, Inc. (Lakeland), a Florida Corporation, and their insurer, St. Paul Fire and Marine Insurance Company (St. Paul), a Minnesota Corporation.

Simply stated this litigation arises from Cobb's negligent operation of an automobile on the public highways of Volusia County, Florida causing death and injuries to persons not party to this suit. The following facts found by the district court are amply supported by the record. At the time of the collision Cobb was driving a Ford Torino automobile owned by Greyhound and insured under a policy issued to Greyhound by Old Republic. Prior to the date of the accident the Torino had been entrusted to Lakeland, Cobb's principal, for purposes of sale either at Lakeland's weekly auction or off the block. The automobile was also insured under the "non-owned automobile" clause in Lakeland's personal injury liability insurance policy issued by St. Paul. Finally, since Lakeland consented to Cobb's use of the Torino for personal purposes, Cobb was insured with respect to injuries from the accident under the "non-owned automobile" clause in the policy Volkswagen issued to Ocie Mae Cobb covering Jeptha L. Cobb.

Two of the four state court civil actions arising out of the accident have been settled and the other two remain pending. To effect the settlement, St. Paul, on behalf of Manheim and Lakeland, contributed 75,000 dollars; Old Republic, on behalf of Greyhound, contributed 65,000 dollars; and Greyhound itself contributed 10,000 dollars pursuant to a 10,000 dollar deductible provision in its policy with Old Republic. Volkswagen, on behalf of the Estate of Jeptha L. Cobb, tendered into the registry of the Circuit Court of Volusia County—in which the civil actions were pending and where two pending civil actions are still docketed—the limits of its policy, 100,000 dollars. All of the parties herein have stipulated that the amount of the settlement was reasonable and that it was made without prejudice to the rights of any of the parties to seek a declaration of their respective rights and liabilities in connection with the accident.

The district court correctly concluded that Cobb, Lakeland, and Greyhound were all subject to damage suit

judgments in favor of the injured parties. Cobb was of course liable as the driver for damages proximately resulting from his negligent operation of the vehicle. Lakeland, as bailee of the automobile was also liable because of its consent to Cobb's operation of the vehicle. Martin v. Lloyd Motor Co., 119 So.2d 413 (Fla.App.1960); Frankel v. Fleming, 69 So.2d 887 (Fla.1954). Greyhound is similarly liable under the Florida dangerous instrumentality doctrine which imposes upon the owner of an automobile vicarious liability to persons injured as a result of the negligence of a person operating the automobile with the owner's consent. E. g., Engleman v. Traeger, 102 Fla. 756, 136 So. 527 (1931); Southern Cotton Oil Co. v. Anderson, 80 Fla. 441, 86 So. 629 (1920); Ray v. Earl, 277 So.2d 73 (Fla.App.1973); Martinez v. Hart, 270 So.2d 438 (Fla.App.1972); Allstate Ins. Co. v. Chastain, 251 So.2d 354 (Fla.App. 1972), cert. denied, 263 So.2d 578 (Fla. 1972); Hertz Corp. v. Hellens, 140 So.2d 73 (Fla.App.1962). "[W]hen control of such a vehicle is voluntarily relinquished to another, only a breach of custody amounting to a species of conversion or theft will relieve an owner of responsibility for its use or misuse." Susco Car Rental System v. Leonard, 112 So.2d 832, 835–836 (Fla.1959); accord, Thomas v. Atlantic Associates, Inc., 226 So.2d 100 (Fla.1969); Ivey v. National Fisheries, Inc., 215 So.2d 74 (Fla.App.1968).

The point which Manheim, Lakeland and St. Paul contest is the lower court's conclusion of law that St. Paul was jointly primarily liable along with Old Republic.

As noted by the district court, Florida case law has established the principle that the insurer of the owner

of a vehicle is primarily liable to persons injured as a result of the negligence of a person operating that instrumentality with the owner's consent. E. g., Roth v. Old Republic Ins. Co., 269 So.2d 3 (Fla. 1972); Ray v. Earl, 277 So.2d 73 (Fla. App.1973). The Roth opinion "is based on the policy of Florida law as developed in the dangerous instrumentality doctrine to require an owner to provide financial responsibility for his motor vehicles operated on the public highways of the state with his 'consent'." Rouse v. Greyhound Rent-A-Car, Inc., 369 F.Supp. 1072, 1076 (M.D.Fla.1973). Even where an owner of an automobile has voluntarily entrusted it to another, and this second person subsequently entrusts the vehicle to still another, the third person is also covered by the owner's policy because of the Financial Responsibility Law and the policy's conformity therewith. Fla.Stat.Ann. § 324.151(1)(a) (1971).[1] See Roth, supra. In such a case, where a permittee of the bailee acquires possession of the automobile, the owner's consent to the third party's use will be implied in cases where no express limitation or negation of consent can be found. See, e. g., Ray v. Earl, and Susco, supra. In fact, this "doctrine of implied consent . . . has been used to extend the insurer's liability in a manner such that it is usually coextensive with the owner's liability to injured third parties under tort doctrines of dangerous instrumentality and vicarious and imputed negligence." Ray v. Earl, 277 So.2d 73, 76 (Fla.App.1973).

The district court concluded that since Lakeland enjoyed certain incidents of ownership in the vehicle at fault it should be treated as a joint "owner" with Greyhound, that as owners both

1. Florida Statutes 324.151—Motor vehicle liability policies; required provisions

(1) A motor vehicle liability policy to be proof of financial responsibility under § 324.031(1), shall be issued to owners or operators under the following provisions: (a) An owner's liability insurance policy shall designate by explicit description or by appropriate reference all motor vehicles with respect to which coverage is thereby granted and shall insure the owner named

therein and any other person as operator using such motor vehicle or motor vehicles with the express or implied permission of such owner, against loss from the liability imposed by law for damage arising out of the ownership, maintenance, or use of such motor vehicle or motor vehicles, within the United States or the Dominion of Canada, subject to limits, exclusive of interest and costs with respect to each such motor vehicle as is provided for under § 324.021(7).

were liable under the Florida dangerous instrumentality doctrine, and, therefore, that Old Republic and Lakeland were primarily and jointly liable for the payment of damages. We disagree with the district court's holding that Lakeland was an "owner" of the vehicle.

Since the primary liability of the owner's insurer is founded upon the Florida requirement that an owner be financially responsible for use of dangerous instrumentalities such as automobiles, the definition of "owner" adopted by the Financial Responsibility Law governs our determination of Lakeland's status. Section 324.021(9) of the Florida Statutes defines an "owner" as:

> A person who holds the legal title of a motor vehicle or in the event a motor vehicle is the subject of an agreement for the conditional sale or lease thereof with the right of purchase upon performance of the conditions stated in the agreement and with an immediate right of possession vested in the conditional vendee or lessee, or in the event a mortgagor of a vehicle is entitled to possession, then such conditional vendee or lessee or mortgagor, shall be deemed the owner for the purpose of this chapter.

Clearly, Florida intends for the term "owner" to be synonymous with the terms legal or equitable titleholder. Lakeland was not the holder of title nor was it a conditional vendee, lessee, or mortgagor. Given this definitional policy, Old Republic was and remained solely primarily liable for damages to the injured parties. Therefore, unless its coverage amounts be first exhausted, Old Republic must reimburse Volkswagen for the 100,000 dollars which it paid into the

registry of the Circuit Court of Volusia County for settlement of the claims of the injured persons, and reimburse St. Paul for the 75,000 dollars which it contributed to the settlement fund.

Old Republic, while accepting the proposition that the owner's insurer is primarily liable under the dangerous instrumentality doctrine, argues that the doctrine is not applicable where the bailee and his permittee are not "insureds" under the owner's policy. See Ray v. Earl, supra, at p. 75. Old Republic contends that Lakeland and Cobb are not included as insureds in its policy with Greyhound since Lakeland and Cobb fall within the "automobile sales agency exclusion" contained in the omnibus clause of the policy.[2] Old Republic relies on the Florida Second District Court of Appeals' decision in Schaffer v. Government Employees Ins. Co., 280 So.2d 504 (1973), cert. denied, 285 So.2d 23 (Fla.1973), in which the court held that where a bailor entrusts his automobile to a bailee who is engaged in the automobile business, the bailor is not liable for damages resulting from his bailee's negligence in allowing a third person to drive the bailor's automobile. On this authority, Old Republic asserts that Lakeland and Cobb are excluded from coverage under its policy. Such reliance is unfounded since bailment to an automobile agency only satisfies the first prong of the two-pronged test enunciated in the exclusionary provision. Not only must Lakeland and Cobb be operating an automobile business, but, secondly the accident must "aris[e] out of the operation thereof."[3]

In Schaffer, the accident occurred while the third person was driving the car into

---

2. Old Republic's automobile sales agency exclusion states,

> The insurance with respect to any person or organization other than the named insured or such spouse does not apply (1) to any person or organization, or to any agent or employee thereof operating an automobile sales agency, repair shop, service station, storage garage or public parking place, with respect to any action arising out of the operation thereof . . .

3. The term "arising out of" is ordinarily understood to mean originating from, incident to, or connected with the item in question. See Red Ball Motor Freight Ins. v. Employers Mutual Liability Ins. Co., 189 F.2d 374 (5th Cir. 1951); Employers Mutual Casualty Co. v. Federated Mutual Implement & Hardware Ins. Co., 213 F.2d 421 (8th Cir. 1954).

bailee's garage for repairs. Such facts clearly evince an incident arising out of the automobile business. Under the facts before us, however, Cobb was enjoying the use of the automobile for personal reasons at the time of the accident. Employing the basic rules of construction adopted by the Florida courts: (1) that the language used in an insurance policy is to be given its popular and usual significance, unless the context requires a different conclusion, Rosen v. Godson, 422 F.2d 1082 (5th Cir. 1970); Continental Casualty Co. v. Brothwick, 177 So.2d 687 (Fla.App.1965); Aetna Casualty & Surety Co. v. Cartmel, 87 Fla. 495, 100 So.2d 802, 35 A.L.R. 1013 (1924); and (2) that the provisions of a policy of insurance which tend to limit or avoid liability should be construed in favor of the insured and strictly against the insurer. National Automobile Ins. Ass'n v. Brumit, 98 So.2d 330, 332 (Fla. 1957), we conclude that Cobb's accident did not arise out of the operation of Lakeland's automobile business and therefore that the exclusion is inapplicable. The Supreme Court of Louisiana, in McConnell v. Travelers Indemnity Co., 248 La. 509, 180 So.2d 406 (1965), being called upon to interpret an automobile business exclusionary clause containing the same wording as the clause before us, similarly held that the accident did not arise out of the operation of the repair shop where the accident occurred while the repairman was using the automobile for a personal mission during nonworking hours.

The imposition of primary liability upon Old Republic also works to properly distribute the loss according to risks accepted and premiums charged by the three carriers. These considerations dictate that the loss should fall primarily upon the carrier whose premium has been knowledgeably calculated to offset the principal exposure and only secondarily upon carriers, such as St. Paul and Volkswagen, who are receiving a nominal premium for coverage of a type of risk which is episodic and relatively incidental. See Hawkes, Liability Guiding Principles, 1960 Insurance L.J., No. 451 at 481; and Federal Ins. Co. v. Prestemon, 278 Minn. 218, 153 N.W.2d 429 (1967); see also Judge Tate's concurring opinion in State Farm Mutual Automobile Ins. Co. v. Travelers Ins. Co., 184 So.2d 750 (La.App.1966). Because the owner's use may be expected to be the primary and pervasive use, the carrier insuring the owner of a vehicle also has the best opportunity to secure adequate risk experience data to determine a reasonable premium to cover the hazard.

■■■ Having concluded that Old Republic is primarily liable, we turn our attention to a consideration of the apportionment of secondary liability between St. Paul and Volkswagen. The policies of both of these carriers contain "other insurance" clauses whereby the insurers attempt to limit their liability where an insured is covered by two or more policies. Both clauses contain "excess" provisions, i. e., they purport to subject the carrier to liability only for amounts awarded above the total amount recoverable under all other applicable policies.[4] Thus the clauses are mutually repugnant, since if both are given effect neither insurer would be liable. "Certainly, it was not the intent of the parties to provide that a second policy should extinguish the liability of both. Therefore, the two clauses cannot survive." Continental Casualty Co. v. St. Paul Mercury Fire & Marine Ins. Co., 163 F.Supp. 325, 326 (S.D.Fla.1958); accord, Consolidated

---

4. St. Paul's policy provides: "Other Insurance—No Insuring Agreement hereof shall apply to any loss if the Insured is, or would be but for the existence of such Insuring Agreement, insured against such loss under any other policy or policies, bond or bonds, except as respects any excess beyond the amount which would have been payable under any other policy or policies, bond or bonds, had such Insuring Agreement not been effective."

Volkswagen's policy provides, Other Insurance: " . . . the insurance with respect to a temporary substitute automobile or non-owned automobile shall be excess insurance over any other valid and collectible insurance."

Systems, Inc. v. Allstate Ins. Co., 411 F.2d 157 (5th Cir. 1969) (applying Florida law); Factory Mutual Liability Ins. Co. v. Continental Casualty Co., 267 F.2d 818 (5th Cir. 1959) (applying Florida law); Atlantic Nat'l Ins. Co. v. Erie Ins. Exchange, 211 F.Supp. 878 (S.D.Fla.1962). This court, in Motor Vehicle Casualty Co. v. Atlantic Nat'l Ins. Co., 374 F.2d 601 (5th Cir. 1967), employing an *Erie* interpretation of Florida law, held that where two insurance policies both contained "excess" other insurance clauses, then proration was proper. Following *Motor Vehicle Casualty Company*, we conclude that St. Paul and Volkswagen are liable pro-rata in the respective proportion which the amount of each policy bears to the combined total amount of both policies for any recovery beyond the liability limits of the Old Republic policy. *See* 8 Appleman, Insurance Law and Practice § 4913 (1962).

Reversed.