**AMERICAN MOTORISTS INSURANCE CO. et al.**

v.

**AMERICAN EMPLOYERS' INSURANCE COMPANY.**

Civ. A. No. 760331.

United States District Court,
W. D. Louisiana,
Lake Charles Division.

March 24, 1978.

Ruling on Motion for Rehearing
April 17, 1978.

Charles F. Lozes, Terriberry, Carroll, Yancey and Farrell, James H. Roussel, New Orleans, La., for plaintiffs.

Frank M. Brame, Brame, Bergstedt & Brame, Lake Charles, La., for defendant.

VERON, District Judge:

## OPINION

As indicated in the joint stipulation of facts, this matter arises out of an injury to Jack Trahan who was paralyzed after being struck by a bullet fired by Donald W. Kelly, an employee of Lafayette Crewboats, Inc. ("Lafayette"). At the time of this incident, Lafayette was provided comprehensive general liability insurance with limits of $500,-000.00 by American Employers' Insurance Company ("American Employers'"), primary protection and indemnity insurance with limits of $100,000.00 by American Motorists Insurance Company ("American Motorists"), and excess protection and indemnity insurance with limits of $400,000.00 excess of primary by St. Paul Fire and Marine Insurance Company ("St. Paul").

Suit was filed by Trahan against Lafayette in the Fourteenth Judicial District Court for the Parish of Cameron, State of Louisiana. Upon demand of Lafayette, American Employers', American Motorists and St. Paul advanced funds totaling $525,-000.00 (American Employers' contributed one-half this amount and the other two insurers combined to contribute the remaining one-half), on behalf of their insured Lafayette, to settle Trahan's claim, reserving to each the right to later litigate the issue of the coverage of the aforementioned policies. Pursuant to this agreement, the

insurers have instituted this complaint for declaratory judgment to determine which insurer should bear this loss.

Jurisdiction of this court is based on the diversity of citizenship of the parties and on the requisite amount in controversy.

Defendant/American Employers' urges that when the original settlement was funded by the parties in the instant action their agreement to "reserve to each of them all rights" to determine which company should bear the final burden of this settlement gave to American Employers' the right to now litigate both the terms of the respective insurance policies and the question of the underlying liability of its insured to Trahan in the original state action. American Employers' asserts that if it can prove that Kelly was not acting within the course and scope of his employment when he shot Trahan then Kelly's employer (American Employers' insured) was not legally liable to Trahan on the basis of "respondeat superior," and American Employers' therefore was not and is not obligated under its insurance policy to bear any loss resulting from Kelly's actions. American Employers' would have us conclude that the settlement fund was a voluntary act by all interested parties and that the status quo with regard to contribution to the settlement should be maintained. In support of its position, defendant cites the words of the original "receipt and release" signed by Trahan as part of the settlement agreement. That document states in pertinent part:

"I further acknowledge that by paying to me the sums aforesaid, the parties mentioned above do not in anyway admit liability to me for all or any part of the amount paid and that they, also, are making this payment in order to resolve the disputed issues of fact which are involved in my claim."

In opposition to American Employers' position, plaintiffs/American Motorists and St. Paul assert that the question of liability based on "respondeat superior" was an inherent part of the original settlement and should not be relitigated at this time. They urge that the only question left to be litigated is which insurance policy or policies covered the circumstances which gave rise to the underlying liability. These companies cite *National Surety Corporation v. Western Fire and Indemnity Co.*, 318 F.2d 379 (5th Cir. 1963), as authority for a general rule that the existence of liability in an underlying claim may not be litigated by an insurance company subsequent to the settlement of the claim. (Obviously, American Employers' strongly disagrees with the case and its holding.) For reasons which will appear in the following paragraphs we believe that the *National Surety* case enunciates a view which is and should be the law with regard to settlements of this nature.

■ To begin with, defendant/American Employers' strenuously argues that compromises which avoid litigation are favored by the law. Further, it asserts that Louisiana law empowers persons to contract between themselves as to all things except those that are prohibited by law or are contrary to public morals. Even if American Employers' statement with regard to certain compromises is accurate, the instant compromise does not meet the stated criteria. As seen by the existence of the case at bar the original settlement did not avoid litigation. It merely realigned the parties and shifted the forum. The case at bar will be shorter than the original case would have been only because certain facts have been stipulated. Also, the basis of contract law is a concept of agreement between parties in an attempt to avoid further disharmony and litigation. We do not believe that a contract whose express purpose is to lay the foundation for further legal battles should be treated with favor nor should it be expansively interpreted by this court.

With regard to the *National Surety* case American Employers' ask us to ignore its holding completely. American Employers' urges that the decision is illogical and that the fact that it has never been cited indicates its irrationality. We cannot disregard a case which seems so relevant and so similar to the case at bar in so cavalier a fashion. In the total absence of any juris-

prudence to the contrary we are bound both rationally and legally to follow the Fifth Circuit's pronouncements. Indeed, the fact that no recent cases have cited *National Surety* may simply be an indication that the rule stated in that case is taken as settled beyond question.

■ Further, although American Employers' disagrees vehemently, we do not believe that an insurance company can fund a settlement and then be heard to claim that its contribution was totally "voluntary." All three insurance companies funded the settlement because they recognized the very real possibility that a jury would find in favor of the plaintiff and that the jury's award would be far larger than the proposed settlement. As stated in the *National Surety* opinion:

"Undoubtedly, both National [American Employers'] and Western [American Motorists and St. Paul], acting in good faith, were of the opinion that it would be wise and prudent to compromise Tyler's [Trahan's] claim for $30,000 rather than to take the risk that contesting Tyler's [Trahan's] action would result in a much larger jury verdict for Tyler [Trahan]." 318 F.2d 379 at 385.

American Employers' contributed to the settlement only after assessing its case and determining that it was better to pay over a quarter of a million dollars now than to be forced to pay several times that amount later. This is hardly what we would call "voluntary."

■ Finally, American Employers' raises an ingenious but erroneous argument. It argues:

".  .  . in the event the Court deems that it must follow the National Surety Corporation decision because it is a Fifth Circuit case, we suggest that it logically follows from the decision that if American Employers' cannot present the defense of the shooting not arising out of the employment, then American Motorists and St. Paul cannot present the defense of the shooting not arising out of the ownership of the M/V LAP 1. Again, if the National Surety Corporation

case is correct, all counsel have made the following admissions:

1. There is liability on the part of Lafayette Crewboats, Inc. based on:

a. Negligence of Lafayette Crewboats, Inc.

b. Unseaworthiness of M/V LAP 1.

c. The shooting arose out of the employment.

d. The shooting arose out of the ownership of the M/V LAP 1."

Not all of these admissions need have been made, however. In order for Trahan to have proven liability on the part of Lafayette Crewboats, Inc., he would only have been required to show that the shooting arose out of Kelly's employment (admission c) and that the shooting was an act of negligence (admission a). Questions of unseaworthiness and ownership would have been important only for purposes of determining the applicability of various exclusion clauses in the insurance policies under consideration. Thus, it is certainly within the bounds of logic for us to rule that the issues of negligence and respondeat superior were settled as part of the initial settlement agreement while still allowing the other two issues to be raised at this time. Put more precisely, admissions "a" and "c" deal with the relationship between Trahan, Kelly and Lafayette Crewboats, Inc. The remaining proposed admissions deal with the relationship between the three insurance companies vis a vis the already funded settlement.

For the foregoing reasons we hold that the question of whether or not Kelly was acting "in the course and scope of his employment" when shooting Trahan is not an issue which may now be considered by this court. Such a conclusion is mandated both by the *National Surety* case and by common sense. To allow such issues to be litigated after a settlement has been reached could well increase rather than decrease the dockets in our courts.

It having been determined that American Employers' cannot now contest the liability which was the basis of its original settle-

**1318**

ment, American Employers' now argues that its comprehensive general liability insurance policy did not cover the injury to Trahan when proper effect is given to "exclusion (e)" of that policy. Exclusion (e) states in pertinent part:

"This insurance does not apply:
(e) to bodily injury or property damage arising out of the ownership maintenance, operation, use, loading or unloading of,
(1) any watercraft owned or operated by or rented or loaned to any insured, or,
(2) any other watercraft operated by any person in the course of his employment by any insured,
but this exclusion does not apply to watercraft while ashore on premises owned by, rented to or controlled by the named insured."

Defendant urges that if Kelly was acting within the course and scope of his employment then the injuries which resulted from his actions arose "out of the ownership, maintenance, operation, use, loading or unloading" of a watercraft. We are unconvinced by the cases cited by American Employers' as support for its contention that this exclusion should be read broadly and should be invoked in the instant case.

█ Rather, "exclusion (e)" should not be applied to the case at bar for two separate reasons. First, at least two reported cases have held that similar exclusionary language was "ambiguous" and therefore ineffective in excluding coverage. (See *Grigsby v. Coastal Marine Service*, (W.D.La.1964) 235 F.Supp. 97, modified on other grounds, C.A. 5, 1969) 412 F.2d 1011; *Parfait v. Jahncke Service, Inc.*, modified on other grounds (C.A. 5, 1973) 484 F.2d 296.) The law on ambiguities is clear. Such language, even if given some limited effect, is to be construed strictly against the writer of the policy. Ambiguities are to be resolved against the insurance company. This alone would take Kelly's actions out of the purview of the exclusion clause.

█ Second, even if the clause is given full effect, the underlying facts of the instant case were such that Kelly's actions would have been covered by defendant's comprehensive general liability policy. Even though the M/V LAP 1 was undergoing maintenance or loading at the time of the injury that situation, by itself, is not enough to call the exclusion clause into play. (See *Grigsby*, supra; *Ramsey v. Continental Insurance Co.*, (La.App. 2, 1973) 286 So.2d 371.) There must be some connection between the "ownership maintenance . . . loading or unloading" of a watercraft and the actual harm inflicted. Here, there was no connection between the ownership of the M/V LAP 1 by Lafayette and Kelly's act of negligence other than the fact that he had recently docked the craft. The injury arose out of Kelly's decision to discharge a firearm in the vicinity of the dock. The requirement that an employee be acting in the course and scope of his employment (even if we had decided to consider it) goes to the general reason for an employee being where he is at any given moment. The relevant exclusion clause is based on the relationship between Lafayette's vessels and any resulting injuries. The two legal considerations are not necessarily related. We therefore hold that Trahan's injuries did not arise out of the "ownership, maintenance, operation, use, loading or unloading" of a watercraft. Defendant's comprehensive general liability policy was in effect and "exclusion (e)" is not applicable to the facts of this case.

█ Plaintiffs/American Motorists and St. Paul urge that the events which were the basis of the original suit against their insured were not covered by their protection and indemnity policies. The preamble of the P & I policy issued to Lafayette states:

"The Assurer hereby undertakes to make good to the assured or the assured's executors, administrators and/or successors, all such loss and/or damage and/or expense as the assured shall as owners of the vessel named herein have become liable to pay on account of the liabilities, risks, events, and/or happenings herein set forth."

The intent of such language is clear. The P & I policy was to provide protection to Lafayette only for losses suffered in its capacity as owner of the M/V LAP 1. In interpreting a similar policy the Fifth Circuit has held:

> "There must be at least some causal operational relation between the vessel and the resulting injury." *Lanasse v. Travelers Ins. Co.*, (C.A. 5, 1971) 450 F.2d 580, 584.

The stipulated facts in the instant case indicate that at the time of the shooting Kelly had docked Lafayette's boat for refueling and had proceeded, with his pistol, to the Petroleum Distributors office. While in the office, he leaned out of the window and fired three shots, one of which ricocheted off a bottle and struck Trahan. Under such conditions Lafayette's liability could have been based on a theory of "respondeat superior" but certainly not on its responsibilities as owner of a vessel. There was no "causal relation" between the vessel and Trahan's injury (such as a collision between vessels or unseaworthiness of a ship). We therefore hold that the P & I policies of American Motorists and St. Paul did not cover the injuries to Trahan and that plaintiff/insurance companies had no obligation to fund the settlement agreement.

For all of the above reasons we must conclude that American Employers' may not escape liability by claiming that Kelly's actions were not within the course and scope of his employment, nor may it escape liability through reliance on the exclusion clause to be found in its policy. Further, the American Motorists and St. Paul policies do not cover the events which gave rise to the initial suit by Trahan. Having so held it is evident that American Employers' must bear the full expense of the settlement paid to Trahan as compensation for his injuries. It is therefore ordered that American Employers' refund to plaintiffs their contribution to the settlement fund, that amount having been reduced to $237,500 through prior agreement between the parties.

## RULING ON MOTION FOR REHEARING

VERON, Judge:

As indicated in the joint stipulation of facts, this matter arises out of an injury to Jack Trahan who was paralyzed after being struck by a bullet fired by Donald W. Kelley, an employee of Lafayette Crewboats, Inc. ("Lafayette"). At the time of this incident, Lafayette was provided comprehensive general liability insurance with limits of $500,000.00 by American Employers' Insurance Company ("American Employers'"), primary protection and indemnity insurance with limits of $100,000.00 by American Motorists Insurance Company ("American Motorists"), and excess protection and indemnity insurance with limits of $400,000.00 excess of primary by St. Paul Fire and Marine Insurance Company ("St. Paul").

Suit was filed by Trahan against Lafayette in the Fourteenth Judicial District Court for the Parish of Cameron, State of Louisiana. Upon demand of Lafayette, American Employers', American Motorists and St. Paul advanced funds totaling $525,000.00 (American Employers' contributed one-half this amount and the other two insurers combined to contribute the remaining one-half), on behalf of their insured Lafayette, to settle Trahan's claim, reserving to each the right to later litigate the issue of the coverage of the aforementioned policies. Pursuant to this agreement, the insurers instituted a complaint for declaratory judgment to determine which insurer should bear the loss of the monies paid out in settlement.

In our opinion of March 24, 1978, we ruled that defendant/American Employers' was to refund to plaintiffs the monies which they had contributed to the settlement. Our decision was based on several factors:

1. We refused to consider the question of whether Kelley had been acting "within the course and scope of his employment" at the time of the accident. Defendant's "comprehensive general liability" policy was therefore found to be in force.

2. Further, an exclusion clause found in defendant's policy did not operate to preclude American Employers' liability.

3. Finally, plaintiffs' "protection and indemnity" policies were not called into play since there was no "causal operational relationship between the vessel and the resulting injury."

Defendant now moves for a rehearing, urging as a basis for its motion that the court erroneously relied on *National Surety Corp. v. Western Fire § Indemnity Co.,* 318 F.2d 379 (5th Cir. 1963), in refusing to consider the question of "course and scope of employment." Defendant cites *Rouse v. Greyhound Rent-a-car, Inc.,* 506 F.2d 410 (5th Cir. 1975), in support of its contention.

■ Our original decision on this matter was predicated on the assumption that liability of Lafayette Crewboats, Inc. (Kelley's employer) is to be taken as established as the result of the settlement paid to Trahan. We therefore concluded that evidence as to whether Kelley was acting within the "course and scope of his employment" would not be considered subsequent to the settlement. We believe that it is still an accurate statement of the law that an insurance company may not offer evidence for the purpose of proving that a plaintiff would or would not have prevailed in a cause of action had that cause gone to trial rather than being settled. For example, a motorist's insurance company which has settled a claim with a plaintiff arising out of an automobile accident may not then be heard to urge, as part of a new action, that the injured plaintiff would not have prevailed against the defendant/insured in the original suit. The law enunciated in *National Surety* certainly remains the controlling rule with regard to this issue, and our previous opinion remains valid.

■ In the case at bar, however, certain evidence might be used to prove two distinct contentions. In the "insured motorist" hypothetical mentioned above the insurance company, in a suit involving several insurance companies which had contributed to the initial settlement, would certainly be entitled to offer evidence to show that its policy was not in effect at the time of the accident. (Such evidence might include expiration date, premium payments, specific exclusionary language, etc.) The instant case presents us with a set of facts which might serve as evidence both regarding the liability of the original defendant to the original plaintiff (before settlement of the claim) and regarding the applicability of the relevant insurance policies to the subject matter of the claim. To the extent that *Rouse* stands for the proposition that a court may consider the underlying facts to determine whether or not an insurance policy is in force subsequent to a settlement that case is accurate and controlling. Therefore, we now hold that the question of whether Kelley was acting "within the course and scope of his employment" must be answered for the limited purpose of deciding whether the American Employers' policy covered his actions.

Though recent Louisiana decisions have indicated a progressive expansion of the definition of "course and scope" for the purpose of determining an employer's vicarious liability (see, for example, *Leger v. Southern Farm Bureau Casualty Insurance Co.,* 251 So.2d 801 (La.App., 1971); *Jinks v. McClure,* 344 So.2d 675 (La.App., 1977), the general rule with respect to this area was stated most succinctly in *St. Paul Fire & Marine Insurance Co. v. Roberts,* 331 So.2d 529 (La.App., 1976). The court stated at page 537:

"There is not, nor can there be, any hard and fast rule for determination of whether an employee is or is not acting within the scope and during the course of his employment. Each such instance must be determined in the light of its own peculiar facts and circumstances."

Further, certain specific factors must be taken into account in determining the proper characterization of an employee's actions.

"The factors considered in making such a determination include the time the act was committed meaning whether at a time the employee was obligated to perform a duty for his employer. Also to be considered are the place, circumstances

and purpose of the act insofar as it may reasonably relate to or foster the employer's business. Additionally, the motive of the employee in performing the act is of paramount importance, as also are the questions of whether the act is one usually performed by employees engaged in similar capacities and whether the employer had reason to expect such an act would be performed by the employee." id.

 In applying each one of these factors to the facts of the instant case it must be concluded that although Kelley's acts were committed during a time when he was obligated to perform a duty for his employer, the circumstances and purposes of the acts did not reasonably foster the employer's business. Also, despite Kelley's protestations to the contrary, the evidence that his motive in shooting was to prepare himself to defend his employer's vessel against sharks is unconvincing. Finally, it is clear that the specific acts involved are not usually performed by employees engaged in similar capacities, and the employer (Lafayette) certainly had no reason to expect that Kelley would act as he did. Indeed, the evidence is that Lafayette would have prohibited its employee from engaging in such activities had his actions been known. Taken as a whole, these factors lead inexorably to the conclusion that Kelley was in no way acting within the course and scope of his employment in accidentally shooting Trahan.

By holding that Kelley was acting outside the course and scope of his employment it is obvious that American Employers' comprehensive general liability policy does not operate to insure Lafayette Crewboats for these specific acts of its employee. At the same time, our earlier decision that the various "P & I" policies do not cover the accident is unaffected by our most recent examination of the facts. Therefore, upon reconsideration of the underlying circumstances, we now hold that since none of the relevant insurance policies is truly applicable to Kelley's actions, all insurance companies must bear the losses resulting from

their respective contributions to the settlement. There is to be no reimbursement or redistribution of funds among the various parties as the result of this litigation. Neither shall there be any attempt by the insurance companies to recover from their insured any of the money paid out in settlement.

## JUDGMENT UPON REHEARING

This case having come before the court, Honorable Earl E. Veron, presiding, upon rehearing, on the basis of stipu¹ ʼ⁻d facts, briefs presented by the parties and various other exhibits, and a decision having been rendered for the reasons set forth in a written opinion of April 17, 1978,

IT IS ORDERED, ADJUDGED AND DECREED that there be judgment in favor of defendant/American Employers' Insurance Company and against plaintiffs/American Motorists Insurance Company and St. Paul Fire and Marine Insurance.