## WINDSOR MT. JOY MUTUAL INSURANCE COMPANY

v.

## Samuel P. POZZI, Jr.

v.

## PRUDENTIAL PROPERTY & CASUALTY COMPANY.

### Civ. A. No. 93–1785.

United States District Court, E.D. Pennsylvania.

Oct. 6, 1993.

John T. Biezup, Philadelphia, PA, for plaintiff.

Matthew Hanna, Media, PA, for defendant Samuel Pozzi.

Vincent Patrick Reilly, Marshall, Dennehey, Warner, Coleman and Goggin, Philadel-

phia, PA, for defendant Prudential Property & Casualty Co.

## MEMORANDUM

DALZELL, District Judge.

Plaintiff Windsor Mt. Joy Mutual Insurance Company ("Windsor Mt. Joy") brought this suit seeking a declaratory judgment that it is not obligated under a marine insurance policy to defend or indemnify defendant Samuel P. Pozzi, Jr. in a wrongful death action the Estate of Donald L. Culp filed against Pozzi.

On April 2, 1993, Windsor Mt. Joy filed this action, and on May 14 Pozzi filed a third-party complaint against Prudential Property & Casualty Company as a third-party defendant. After a June 30 conference, and upon consideration of Prudential Property & Casualty's memorandum, we issued an Order on August 17 placing Pozzi's third-party action against Prudential Property & Casualty in civil suspense pending the resolution of a parallel homeowner's coverage case in New Jersey state court.[1]

Windsor Mt. Joy has now filed a motion for summary judgment, and defendant Pozzi has filed a cross-motion for summary judgment.

Upon consideration of these motions and plaintiff's reply, for the reasons that follow we will grant Windsor Mt. Joy's motion for summary judgment and deny Pozzi's cross-motion for summary judgment.[2]

## I. *Factual Background*

The facts necessary to resolve these motions are undisputed. On June 15, 1990, Windsor Mt. Joy issued a "skipper policy" to Samuel P. Pozzi, Jr. The policy provided coverage for Pozzi's forty-two foot Bertram Cruiser from August 18, 1990 to August 18, 1991. The provision of the policy in controversy, section B1.(b)(1), states:

**SECTION B–PROTECTION AND IN-DEMNITY INSURANCE**

**1. Liability Coverage.** If the Insured shall become legally obligated to pay and shall pay as damages any sum or sums because of:

(b) Bodily Injury:

(1) Loss of life or bodily injury ... arising out of the ownership, maintenance or use of the vessel, the Company will reimburse the Insured for the sums so paid or which may be required to indemnify the Insured for such loss;

. . . .

Exhibit 2 to Plaintiff's Motion for Summary Judgment.[3]

The underlying suit alleges that on September 15, 1990, Pozzi's vessel was docked at the Bohemia Bay Yacht Harbor in Chesapeake City, Maryland. A water hose was attached to Pozzi's vessel and to a dockside spigot. A member of Donald Culp's party picked up the water hose, apparently to wash off Culp's vessel which was also docked at the Bohemia Bay Yacht Harbor. For unknown reasons, Culp and Pozzi exchanged angry words, and the dispute led to a fight on the dock. After the fight, both Pozzi and Culp eventually returned to their vessels. At some point during this period of retreat, Culp got a knife and threatened to kill or cut Pozzi. Pozzi deposition, pp. 31–32, Exhibit 5 of plaintiff's brief in support of plaintiff's motion for summary judgment. Culp then returned to a place on the dock near the stern area of Pozzi's vessel, now without the knife, but with pencil and paper. Another argument ensued. *Id.* As Culp walked a few steps to return to his ship, he collapsed and died on the dock.

It is agreed that at all times Culp remained on the dock and never set foot on Pozzi's vessel.

The Estate of Culp brought a wrongful death action in this Court, alleging that Culp died as a result of Pozzi's reckless or negligent conduct. Pozzi has demanded that Windsor Mt. Joy defend and indemnify Pozzi under the marine insurance policy we have quoted.

---

1. Both Pozzi and Prudential Property & Casualty are citizens of New Jersey.

2. We have admiralty jurisdiction pursuant to 28 U.S.C. § 1333. See "Discussion", *infra* p. 4.

3. Defendant agrees this is the policy issued to Pozzi. Defendant's brief in support of defendant's motion for summary judgment, p. 4.

## II. *Legal Standard*

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

In the case before us, the facts necessary to decide the pending summary judgment motions are, as noted, undisputed.

## III. *Discussion*

■ Because this case involves the construction of a contract for marine insurance, it is within our admiralty jurisdiction, and federal maritime law applies. *Wilburn Boat Company v. Fireman's Fund Ins. Co.*, 348 U.S. 310, 75 S.Ct. 368, 99 L.Ed. 337 (1955); *Weinstein v. Eastern Airlines, Inc.*, 316 F.2d 758, 765 (3d Cir.1963), *cert. denied*, 375 U.S. 940, 84 S.Ct. 343, 11 L.Ed.2d 271 (1963); *Pittston Company v. Allianz Ins. Co.*, 795 F.Supp. 678 (D.N.J.1992) (Wolin, J.).

■ Where, however, there is an absence of a controlling federal statute or an established rule of general maritime law, state law governs the scope and validity of contracts of marine insurance. Because it does not appear that any federal statute or established rule of maritime law governs the interpretation and construction of contracts for marine insurance, state law controls these issues.

*Pittston Company v. Allianz Ins. Co.*, 795 F.Supp. at 689, n. 10. We must, therefore, look to state law to guide our construction of the language in the insurance policy Windsor Mt. Joy issued.

To which state's law should we refer?

■ We are not *Klaxon*-required to look to Pennsylvania's choice of law rules when applying federal common law that, in turn, uses state law merely to fill interstices. "A federal court sitting in admiralty must apply federal choice of law rules." *Mentor Ins. Co. (U.K.) Ltd. v. Brannkasse*, 996 F.2d 506, 513 (2d Cir.1993), quoting *State Trading Corp. v.*

*Assuranceforeningen Skuld*, 921 F.2d 409, 414 (2d Cir.1990). Our enterprise thus is of "ascertaining and valuing points of contact between the transaction and the states or governments whose competing laws are involved." *Lauritzen v. Larson*, 345 U.S. 571, 582, 73 S.Ct. 921, 928, 97 L.Ed. 1254 (1953).

■ In a contract case, we believe, as the Second Circuit did in *State Trading Corp., supra*, 921 F.2d at 417, that the task the Supreme Court has set for us in *Lauritzen* is best illuminated under the modern approach expressed in Restatement (Second) of Conflict of Laws § 188(2) (1971). This Restatement section refers us to the place of contracting, negotiating, and performing the contract, as well as to the location of the subject matter of the contract and the domicile, residence and place of business of the parties. Although it is not clear from the facts proffered to us where the place of contracting was, we note that Windsor Mt. Joy, based in Ephrata, Pennsylvania, issued the policy to Pozzi through a Maryland insurance broker. On the other hand, Pozzi is a citizen of New Jersey. Since it seems undisputed that the insured vessel was berthed in Maryland, and because the fight and death occurred in that state, it would appear that Maryland has the most significant interest here, and so we are inclined to refer to its law. Interesting as further refinement might be to this assay, however, it would appear that the conclusions we reach would be unchanged since New Jersey and Maryland law are much the same in this area.

■ At issue in this case is whether the skipper policy covers Pozzi's allegedly negligent conduct which caused Culp's death, *i.e.* whether Culp's death arose from the "ownership, maintenance or use" of Pozzi's vessel. It is well-established in Maryland (as elsewhere) that "insurance policies ordinarily are construed in the same manner as contracts generally.... Words are accorded their ordinary and accepted meanings." *Collier v. MD–Individual Practice Association, Inc.*, 327 Md. 1, 5–6, 607 A.2d 537, 539 (1992); *see De Jarnette v. Federal Kemper Ins. Co.*, 299 Md. 708, 475 A.2d 454 (1984).[4]

---

**4.** If we were to apply New Jersey law, as Pozzi argues, Defendant's Brief in Support of Defen-

Pozzi claims that the relevant policy language is ambiguous and thus must be construed in favor of the insured. Defendant's Brief in Support of Defendant's Motion for Summary Judgement, p. 4. We find, however, that the language "arising out of the ownership, maintenance or use of the vessel" is unambiguous. As the Maryland Court of Appeals has held, "[t]his is standard phraseology found in insurance policies." *De Jarnette*, 299 Md. at 719, 475 A.2d at 460.[5] We will, therefore, give the terms their plain and ordinary English meanings.

We find two cases from outside our Circuit to be instructive in applying these words, even though these decisions are not directly applicable because they involve the commercial use of vessels.

In *American Motorists Ins. Co. v. American Employers' Ins. Co.*, 447 F.Supp. 1314 (W.D.La.1978), the plaintiff was injured when an employee of the insured shot the plaintiff. The only connection to the vessel was that the employer and the employee had just docked the ship. The district court stated that "there must be some connection between the 'ownership, maintenance ... loading or unloading' of a watercraft and the actual harm inflicted." 447 F.Supp. at 1318. The court found that there was no such connection between plaintiff's injuries and the ownership, maintenance, operation or use of the vessel. *Id.*

In *Lanasse v. Travelers Insurance Company*, 450 F.2d 580 (5th Cir.1971), plaintiff was standing on the vessel when a negligent crane operator caused a load to swing into plaintiff. The indemnity provision in *Lanasse* covered the employer against liability for claims " 'directly or indirectly connected with the possession, management, navigation, and operation' of the vessel." 450 F.2d at 583. The Fifth Circuit found that the language of the policy did not encompass an accident in which the vessel was merely an "inert locale of the injury." *Id.* at 584. The Court of Appeals found that the employer's

negligence as a crane operator, rather than as a shipowner, gave rise to liability.

In both these cases, courts found that the injuries sustained did not arise as a result of the operation or ownership of the vessel. Both courts held that there must be "at least some causal operational relation between the vessel and the resulting injury." *See Lanasse*, 450 F.2d at 584, and *American Motorists*, 447 F.Supp. at 1319. In the case before us, the alleged negligence of Pozzi and the resulting death of Culp were manifestly independent from the "ownership, maintenance or usage of the vessel".

The California case of *Ohio Casualty Insurance Company v. Hartford Accident and Indemnity Company*, 148 Cal.App.3d 641, 643, 196 Cal.Rptr. 164, 165 (3d Dist.1983) confirms this common sense conclusion. The question in *Ohio Casualty* was whether the negligent act fell within the exclusionary clause of a homeowners policy that excluded coverage for those acts "arising out of the ownership, maintenance, operation, use" of a vessel. The injured party was a passenger on the insured's ship and was injured when she dove off the stopped vessel and a passing ship struck her. It was alleged that the insured negligently supervised and controlled the injured party. The California Court of Appeals held that:

> such negligence on [the insured's] part was not in any way dependent on the use of the boat before liability would arise. His liability for his acts would be unaffected whether the acts occurred on a boat, a pier or on the shore. That they occurred on the boat is fortuitous.

148 Cal.App.3d at 646, 196 Cal.Rptr. at 168.

Any negligence on Pozzi's part did not stem from the ownership, maintenance or use of his Bertram Cruiser. If this altercation, which is the alleged cause of Culp's death, occurred on the land 100 feet away from Pozzi's ship, there could be no credible argument that the skipper policy would cover any consequences of the fight. The fact that this

---

dant's Motion for Summary Judgment, p. 3, this principle of insurance policy construction would be the same. See *Jorgenson v. Metropolitan Life Ins. Co.*, 136 N.J.L. 148, 156, 55 A.2d 2, 4 (1947).

**5.** New Jersey has also found this language to be unambiguous. *Zurich General Accident & Liability Ins. Co. v. American Mut. Liability Ins. Co.*, 118 N.J.L. 317, 319, 192 A. 387, 388 (1937).

incident occurred on the dock is a pure fortuity and of no coverage consequence.

We therefore find unconvincing Pozzi's argument that the marine insurance policy should cover the incident because the fight began over the hose which was attached to Pozzi's ship. Even if the argument began because of the hose, it is too attenuated to say that Culp's resulting death occurred because of the operation of Pozzi's vessel.

For all of the above reasons, we find that there is no liability under the skipper policy, and that Windsor Mt. Joy is not required to indemnify or defend Pozzi in the underlying suit. We will thus grant the insurer's motion for summary judgment and deny Pozzi's cross-motion for summary judgment.[6] An appropriate Order follows.

### ORDER

AND NOW, this 6th day of October, 1993, upon consideration of plaintiff's motion for summary judgment and defendant's cross-motion for summary judgment and plaintiff's reply, it is hereby ORDERED that:

1. Plaintiff's motion for summary judgment is GRANTED;

2. Defendant's motion for summary judgment is DENIED;

3. JUDGMENT IS ENTERED in favor of plaintiff Windsor Mt. Joy Insurance Co. and against defendant Samuel P. Pozzi, Jr.;

4. The Court declares that plaintiff is not required to defend or indemnify defendant for the claims of the Estate of Donald L. Culp against Samuel P. Pozzi, Jr. for the death of Donald L. Culp, pursuant to Policy No. SK:150893;

5. The Court declines to exercise supplemental jurisdiction over the third-party action against Prudential Property & Casualty Company, and this claim shall be removed from civil suspense in order for it to be DISMISSED; and

6. The Clerk shall CLOSE this case statistically.

---

**6.** In view of our judgment disposing of the claim founded upon our admiralty jurisdiction, we shall decline to exercise our supplemental jurisdiction over the non-diverse third-party claim, pursuant to 28 U.S.C. § 1367(c)(2) and (3).