ACADIA INSURANCE COMPANY,
Plaintiff, Appellant,

v.

Michael McNEIL, et al., Defendants,
Appellees,

George McNeil, Plaintiff, Appellee.

No. 96–2240.

United States Court of Appeals,
First Circuit.

June 17, 1997.

Bruce W. Felmly, Manchester, NH, with whom J. Kirk Trombley, McLane, Graf, Raulerson & Middleton, Portsmouth, NH, Marilyn L. Lytle, and Thacher Proffitt & Wood, New York City, were on brief, for plaintiff, appellant.

Timothy R. McHugh and Hoch & McHugh, Boston, MA, on brief for American Institute of Marine Underwriters, amicus curiae.

Christine M. Rockefeller, with whom Burns, Bryant, Hinchey, Cox & Rockefeller, P.A., Dover, NH, was on brief, for appellee Michael McNeil.

Emmanuel Krasner, Farmington, NH, with whom Krasner Professional Association, was on brief, for appellee George McNeil.

Before SELYA, Circuit Judge, COFFIN, Senior Circuit Judge, and LYNCH, Circuit Judge.

## CERTIFICATION OF A QUESTION TO THE NEW HAMPSHIRE SUPREME COURT

SELYA, Circuit Judge.

This case involves an issue of New Hampshire law as to which we have found no decisive New Hampshire precedent. Accordingly, we certify the controlling question of state law to the New Hampshire Supreme Court in accordance with New Hampshire Supreme Court Rule 34 (1997).

### Background

In 1995, a boating accident occurred on Lake Winnipesaukee in Alton, New Hampshire, involving a boat owned and operated by appellee Michael McNeil. His father, appellee George McNeil, was a passenger aboard the craft. The appellant, Acadia Insurance Company (Acadia), insured Michael McNeil's boat under its Yacht Policy # YPA0008483–11, which had been issued and delivered in New Hampshire. When George McNeil sued his son for negligence in a New Hampshire state court, claiming to have sustained bodily injuries and consequential damages, Acadia denied coverage and filed a declaratory judgment action against Michael McNeil in New Hampshire's federal district court (invoking the court's jurisdiction over both admiralty and diversity cases, see 28 U.S.C. §§ 1332, 1333(1) (1994)). Acadia maintained that it had no obligation to defend or indemnify its named insured, Michael McNeil, relative to his father's claim

because the policy in question excluded coverage for intra-family liability.

Thereafter, George McNeil filed a state-court action against Acadia, seeking a declaration that the intra-family exclusion contained in Acadia's policy was unenforceable. Acadia removed that case to the federal forum. The district court consolidated the two cases. When the parties cross-moved for summary judgment, the court ruled that a New Hampshire statute, N.H.Rev.Stat. Ann. § 412:2(II) (Supp.1996), invalidated the intra-family exclusion, and it entered judgment accordingly. This appeal ensued.

The facts that bear on the coverage question are largely undisputed. They give rise to a pair of legal questions. First, inasmuch as the New Hampshire statute clearly applies to liability policies, it must be determined whether the yacht policy which Acadia issued to Michael McNeil is a species of liability insurance as opposed to a species of ocean marine insurance. Second, if the policy is indeed an ocean marine policy, as Acadia and its amicus contend, the question remains whether the state statute applies to ocean marine policies.

### Classifying the Policy

The first of the two questions that we have posed implicates federal admiralty law, and so we answer it ourselves.

■ Federal admiralty jurisdiction exists when the subject matter of a contract which underlies a case or controversy is maritime in nature. See Insurance Co. v. Dunham, 78 U.S. (11 Wall.) 1, 29, 20 L.Ed. 90 (1870). "The general doctrine that in contract matters admiralty jurisdiction depends upon the nature of the transaction ... must ... be treated as settled." Grant Smith–Porter Ship Co. v. Rohde, 257 U.S. 469, 476, 42 S.Ct. 157, 158, 66 L.Ed. 321 (1922). In furtherance of this doctrine—which is as vibrant now as it was in 1922—federal admiralty jurisdiction attaches in actions based upon marine insurance policies.[1] See Kossick v. United Fruit Co., 365 U.S. 731, 735, 81 S.Ct. 886, 890, 6 L.Ed.2d 56 (1961); Windsor Mt. Joy Mut. Ins. Co. v. Giragosian, 57 F.3d 50, 54 (1st Cir.1995); Albany Ins. Co. v. Wisniewski, 579 F.Supp. 1004, 1013 (D.R.I.1984).

■ The rule, once stated, must be applied, and its application depends upon how a particular policy is to be classified. Marine insurance is defined as insurance with a subject matter specifically related to hazards encountered in maritime transportation, including the risks of river and inland navigation. See Dunham, 78 U.S. at 30; see also Jeffcott v. Aetna Ins. Co., 129 F.2d 582, 584–85 (2d Cir.1942); 1 Alex L. Parks, The Law & Practice of Marine Insurance & Average 19 (1987); 1 Lee R. Russ & Thomas F. Segalla, Couch on Insurance 3d § 1:58, at 1–80 to 1–81 (1996); see generally Kenneth H. Volk, Parsing the Admiralty Clause: Jurisdiction of Marine Insurance Transactions, 66 Tul. L.Rev. 257, 269–274 (1991) (canvassing definitions). Specifically, ocean marine insurance is insurance associated primarily with risks related to vessels or the maritime industry,[2] and it extends to exposures in

---

1. The origins of modern marine insurance date from the late seventeenth century, when merchants, bankers, and shippers agreed to share the risks of marine ventures. See 2 Thomas J. Schoenbaum, Admiralty & Maritime Law § 19–1, at 402–03 (2d ed.1994). In contradistinction, liability insurance is largely a creature of the last century. See S.S. Heubner, et al., Property & Liability Insurance 353 (3d ed.1982). Moreover, marine insurance arose under the aegis of maritime law, which derives from customs at sea, whereas liability insurance arose under the aegis of the common law, which derives from customs on land. See Floyd v. Lykes Bros. Steamship Co., 844 F.2d 1044, 1046 (3d Cir.1988). Courts long have recognized that there are valid reasons for keeping marine insurance law in harmony with maritime law. See, e.g., Standard Oil Co. v. United States, 340 U.S. 54, 59, 71 S.Ct. 135, 138, 95 L.Ed. 68 (1950); Queens Ins. Co. v. Globe & Rutgers Fire Ins. Co., 263 U.S. 487, 493, 44 S.Ct. 175, 176–77, 68 L.Ed. 402 (1924).

2. In maritime law, vessels include crafts capable of use on oceans, rivers, seas, and navigable waters. See, e.g., 1 Steven F. Friedell, Benedict on Admiralty § 162, at 10–3 (7th ed. rev.1996). Since "pleasure boats constitute an important part of maritime commerce," admiralty jurisdiction extends to pleasure craft. Sirius Ins. Co. (UK) Ltd. v. Collins, 16 F.3d 34, 37 (2d Cir.1994); cf. Foremost Ins. Co. v. Richardson, 457 U.S. 668, 674–77, 102 S.Ct. 2654, 2658–59, 73 L.Ed.2d 300 (1982) (approving the exercise of federal jurisdiction over a tort claim involving a pleasure boat).

inland waterways. *See* 1 Arthur E. Brunck et al., *Ocean Marine Insurance* 1–4 (1988); Volk, *supra*, at 274. Inland marine insurance, by contrast, covers risks inherent in land transportation. *See* Volk, *supra*, at 276; *Lariviere v. New Hampshire Fire Ins. Co.*, 105 N.H. 73, 75–76, 193 A.2d 13, 15 (1963).

■ Under the yacht policy here at issue, Acadia provides insurance (up to stated dollar limits) for Michael McNeil's boat (a 1995 Sea Ray 160 SR Sportjet) and confines the area of use to "inland lakes and rivers in the States of Maine, New Hampshire, Vermont, New York and Massachusetts not to exceed 50 miles offshore." The policy comprises several sections. Four of these deal with specified types of coverages: Section A— property insurance (under which the policy insures against loss of, or damage to, the boat's hull and appurtenances by reason of certain maritime perils); Section B—liability insurance (under which the policy insures the boat owner and those in privity with him against "all loss of life, bodily injury and property damage which occur during the policy period and for which you [the insured] become legally liable to pay by reason of your ownership, operation, or maintenance of" the boat);[3] Section C—longshore and harbor workers' compensation insurance; and Section D—medical payments (in connection with injuries arising out of the use of the boat) and uninsured boater insurance. Section E deals with the insured's duties after an accident or loss, and Section F contains the general conditions of coverage. It is, therefore, readily evident that the protection afforded by the yacht policy is tied closely to the pleasure boat and matters arising out of its ownership, operation, and maintenance in specified waters.[4] On that basis, the yacht policy constitutes an ocean marine

policy within the federal courts' admiralty jurisdiction. *See Wilburn Boat Co. v. Fireman's Fund Ins. Co.*, 348 U.S. 310, 311, 313, 75 S.Ct. 368, 369, 370, 99 L.Ed. 337 (1955); *Sirius Ins. Co. (UK) Ltd. v. Collins*, 16 F.3d 34, 37 (2d Cir.1994); *Truehart v. Blandon*, 884 F.2d 223, 226 (5th Cir.1989); *Windsor Mt. Joy Mut. Ins. Co. v. Pozzi*, 832 F.Supp. 138, 139–40 (E.D.Pa.1993).

The appellees' protestations to the contrary lack force. They assert, in general, that any policy which insures against third-party claims is perforce a liability policy. Applying this same syllogism, they assert, in particular, that Acadia's yacht policy must be a liability policy because it includes some liability coverage. But this reasoning blurs the distinction between a policy's *terms* and its *type*, and, in the bargain, ignores the duality inherent in ocean marine insurance.

■ We think it is beyond cavil that liability coverages may be inserted in an ocean marine policy without altering the essential character of the policy, for ocean marine insurance classically comprises both property and liability coverages. *See* 1 Brunck, *supra*, at 2; 1 Parks, *supra*, at 212–13. Indeed, the most hoary form of marine liability insurance—the protection and indemnity policy— indemnifies against a vessel owner's liabilities to third parties. *See* 8 Almer W. Beale, *Benedict on Admiralty* § 6.02[B], at 6–19 to 6–20 (7th ed. rev.1996); 2 Parks, *supra*, at 843. Since almost all insurance policies available to pleasure craft owners contain a liability component, *see* 8 *Benedict on Admiralty*, *supra*, § 6.02, at 6–14; 2 Thomas J. Schoenbaum, *Admiralty and Maritime Law* § 19–1, at 406–07 (2d ed.1994), the appellees' construct, if accepted, would effectively

---

**3.** The liability component expressly excludes losses arising from "property damage or bodily injury which occurs while the insured property is being transported on land."

**4.** Arguably, all waterways are not created equal for jurisdictional purposes. For example, courts have held that a landlocked lake within a single state (i.e., one upon which only intrastate shipping can be maintained) lacks sufficient relation to interstate commerce to sustain federal admiralty jurisdiction. *See Alford v. Appalachian Power Co.*, 951 F.2d 30, 33–34 (4th Cir.1991);

*Three Buoys Houseboat Vacations U.S.A. Ltd. v. Morts*, 921 F.2d 775, 779 & n. 6 (8th Cir.1990); *see also* 8 Almer W. Beale, *Benedict on Admiralty* § 6.01[B][1], at 6–5 (7th ed. rev.1996) (expressing the view that *Wilburn Boat*, which involved a loss on a lake connecting two states, left unresolved the question of admiralty jurisdiction over landlocked lakes). We need not probe this point more deeply because the yacht policy in this case expressly covers the navigation of waters in five states and the open ocean (up to 50 miles offshore).

merge two separate classes of insurance. We refuse to paint with so broad a brush.

Furthermore, an insurance policy's predominant purpose, as measured by the dimensions of the contingency insured against and the risk assumed, determines the nature of the insurance. *See 1 Couch on Insurance 3d, supra,* § 1:8, at 1–14; *Royal Ins. Co. v. Pier 39 Ltd. Partnership,* 738 F.2d 1035, 1036–37 (9th Cir.1984). Assayed in this way, Acadia's yacht policy is plainly a policy of ocean marine insurance. Although the policy includes a liability component, the losses covered are limited to *maritime* liabilities. Hence, the inclusion of this component does not change the essential character of the policy. Just as a general liability policy that only incidentally covers some maritime risks would not constitute an ocean marine policy, so, too, the inclusion of some incidental nonmaritime risks in an ocean marine policy will not transform it into a general liability policy. *See* Volk, *supra,* at 272 ("A marine insurance policy not solely concerned with maritime risks … may be subject to admiralty jurisdiction if the nonmaritime risks are merely incidental.").

The short of it is that the yacht policy at issue here insures a maritime interest (the boat) and insures primarily (if not exclusively) against risks associated with marine ventures. The policy is, therefore, one that falls within the admiralty realm.

The appellees' last contention—that the yacht policy is sailing under false colors and is in fact a personal lines policy—is equally unavailing. The appellees anchor this contention in the significant similarities between the yacht policy form and a personal lines package policy (PLP policy) form that Acadia writes in New Hampshire. They turn a blind eye, however, to the fact that Acadia does not write its PLP policy independently, but issues it only as an endorsement to a homeowner's policy. In other words, it treats the PLP policy as land-based.[5] Thus, the two policies are not only written on different forms, but they are also subject to different standards.

Under the predominant purpose analysis, the maritime coverage contained in the PLP form is only incidental to the coverages ordinarily contained in a basic homeowner's policy. By contrast, that coverage is the *raison d'etre* for the yacht policy. Because the policies are distinct in both origin and purpose, the similarities between the two forms are immaterial.

### The Validity of the Intra– Family Exclusion

Classifying the yacht policy as ocean marine insurance within the contemplation of federal admiralty law brings us to the controlling question of state law. Although the yacht policy falls within the federal courts' jurisdictional purview, admiralty law does not necessarily govern every incident of the insurance contract. Under a well-established principle of federal law applicable to cases of this genre, if federal and state law collide, then the federal rule prevails. *See Wilburn Boat,* 348 U.S. at 314, 75 S.Ct. at 370–71; *Windsor Mt. Joy,* 57 F.3d at 54; *Ingersoll Milling Mach. Co. v. M/V Bodena,* 829 F.2d 293, 305–06 (2d Cir.1987). But in the absence of such a conflict, "*Wilburn Boat* has generally been interpreted, 'in deference to state hegemony over insurance, to discourage the fashioning of new federal law and to favor the application of state law.'" *Windsor Mt. Joy,* 57 F.3d at 54 (quoting *Wisniewski,* 579 F.Supp. at 1013–14).

Acadia has not submitted, and we have not found, any federal maritime rule addressing the propriety of intra-family exclusions in marine insurance policies. The absence of such a rule eliminates the possibility of a

---

5. For example, unlike the yacht form, Acadia files the PLP form with the New Hampshire Insurance Department pursuant to N.H.Rev.Stat. Ann. § 412:2. Moreover, it includes in the PLP policy sections discussing cancellation and non-renewal in compliance with provisions of the Insurance Code applicable to land-based polices.

*See* N.H.Rev.Stat. Ann. § 417–B:3 (1991) (allowing cancellation of a policy only on certain grounds); N.H.Rev.Stat. Ann. § 417–C:3 (1991) (requiring written notice of insurer's intention not to renew). Neither of these sections appears in the yacht policy.

federal-state conflict and remits us to state law.

The pivotal question is easily framed. A New Hampshire statute declares that "[n]o liability policy issued or delivered in this state shall contain any exclusion which would preclude coverage for intra-family or inter-spousal claims." N.H.Rev.Stat. Ann. § 412:2(II). The Acadia yacht policy contains just such an exclusion: it expressly disclaims coverage "for any liability between or among members of [the insured's] family," and defines "family member" broadly as "a person related to [the named insured] by blood, marriage or adoption[,] ... [or] a ward or foster child." The question is whether the statutory proscription reaches an intra-family exclusion where, as here, that exclusion is contained in a policy of ocean marine insurance.

The answer to this question depends on whether RSA § 412:2(II) encompasses ocean marine policies, that is, whether the phrase "liability policy" as employed in the statute means any policy—even an ocean marine policy—which contains some liability coverage. This presents an issue of first impression. Because the answer to this question is not obvious to us, and because New Hampshire's highest court is the final arbiter of the meaning of a statute of that state, we believe that we should certify this question. For what assistance it may provide, we briefly outline the competing considerations which have convinced us that this is a close and cloudy question.

Statutes must, of course, be construed as a whole. *See O'Connell v. Shalala,* 79 F.3d 170, 176 (1st Cir.1996); *State v. Johnson,* 134 N.H. 570, 575, 595 A.2d 498, 502 (1991); *see generally* 3A Norman J. Singer, *Sutherland Statutory Construction* § 70.05, at 220–22 (5th ed.1992). N.H.Rev.Stat. Ann. § 414:2 (1991), relating to rate regulation, refers to N.H.Rev.Stat. Ann. § 401:1 (1983 & Supp. 1996) as providing for the "classes of insurance" that may be written in New Hampshire, and the classification scheme seemingly establishes ocean marine and liability as separate classes of insurance. *Compare*

N.H.Rev.Stat. Ann. § 401:1(II) *with id.* § 401:1(V).

Consistent with this approach, the New Hampshire Insurance Code affords idiosyncratic treatment to ocean marine insurance in various ways; for example, it eschews the usual tax on premiums via-à-vis ocean marine insurance (instead substituting a special tax on underwriting profits), places ocean marine insurance outside the New Hampshire Insurance Guaranty Association, and exempts ocean marine insurance from certain underwriting strictures and from rate regulation. *See id.* §§ 400–A:31(IV), 33; 404–B:3; 406–B:2(II)(k); 414:2. But to state this point is to fashion a double-edged sword; the New Hampshire legislature has insulated ocean marine insurance from a variety of statutory provisions, yet it wrote no such exemption into RSA § 412:2(II). Under one view of the matter, this omission can be read to indicate the legislature's intent to apply the statutory prohibition to ocean marine insurance. *See, e.g., Sunshine Dev., Inc. v. FDIC,* 33 F.3d 106, 116–17 (1st Cir.1994).

The legislative history is no more conclusive. In 1991, when the New Hampshire legislature first addressed intra-family exclusions, it placed the prohibition in RSA § 412:2-a, a section of the Insurance Code which relates only to automobile liability insurance. *See* 1991 N.H. Laws ch. 330, § 1. At the request of the Insurance Department, however, the legislature amended the law two years later, creating RSA § 412:2(II) in an apparent effort to correct the earlier "error." *See* 1993 N.H. Laws ch. 91, § 1; Senate Journal 196 (Feb. 18, 1993) (testimony of Sen. Delahunty on Senate Bill No. 56). Still, it is unclear how much more broadly the legislature intended the new enactment to sweep: this time around, the legislature not only placed the prohibition under the chapter of the Insurance Code entitled "Liability Insurance" but also attached it to a provision relating to the filing and approval of liability forms. Because the Code, read as a whole, does not appear to subject ocean marine policy forms to the filing and approval requirements imposed by RSA § 412:2 (unless, of course, the term "liability insurance" is

read very expansively), it can be argued plausibly that the placement of the prohibition limits its scope and exempts ocean marine policies.

The problem is made more difficult because the public policy arguments cut both ways. Acadia asseverates narrowly that the application of RSA § 412:2(II) to its yacht policy would strip it of the benefit of its bargain with Michael McNeil. Acadia and the amicus asseverate more generally that the application of RSA § 412:2(II) to policies of ocean marine insurance would place domestic marine insurers at a competitive disadvantage and would open the floodgates for state regulation of ocean marine policies, without regard to either their specialized nature or the considerations which favor uniformity. Similar concerns have in the past influenced other state legislatures, see, e.g., *Miller v. American Steamship Owners Mut. Protection & Indem. Co.,* 509 F.Supp. 1047, 1049 & n. 2 (S.D.N.Y.1981) (noting that the New York legislature exempted ocean marine insurance from the state's direct action statute to forfend a perceived competitive disadvantage that would result from inclusion), but we can only guess at the extent to which the New Hampshire legislature may have had such concerns in mind. There are, moreover, countervailing considerations. To cite but two, *Wilburn Boat* appears to authorize some state regulation of ocean marine policies, and the New Hampshire legislature has articulated a preference for what amounts to compulsory insurance coverage of intra-family claims.

### The Question

In sum, the usual sources leave a miasma of doubt about whether RSA § 412:2(II) should be construed to apply to ocean marine polices (or, at least, ocean marine policies which contain a liability component). Since the case at hand turns on the answer to that question—if the state statute is applicable to ocean marine policies, then Acadia's intra-family exclusion is void and coverage attaches for George McNeil's claim; if the state statute is inapplicable to ocean marine policies, however, there is then no reason under federal law why we should not enforce the exclusion and thereby pretermit the claim—prudence suggests that we certify the question to the Supreme Court of New Hampshire. After all, when the meaning of a state law depends on the decisionmaker's ability to discern the state legislature's intent from an array of mixed signals, considerations of federalism, comity, and practicality suggest that the state's highest tribunal is best positioned to make an informed and authoritative judgment.

Consequently, we certify to the state supreme court, *sua sponte,* the following question:

> Does N.H.Rev.Stat. Ann. § 412:2(II) apply to the liability component of an ocean marine insurance policy issued in New Hampshire?

We wish to make it clear that we would welcome the advice of the New Hampshire Supreme Court on any other relevant aspect of New Hampshire law which that court believes should be clarified in order to give context to its response or to permit the proper resolution of the state-law issue confronting us.

The clerk of this court will transmit this certification, along with copies of the briefs and the record appendix in the case, to the New Hampshire Supreme Court. We shall await its reply with interest and appreciation. In the interim, we retain appellate jurisdiction.

*It is so ordered.*