**LA REUNION FRANCAISE, S.A., Plaintiff,**

v.

**Brad BARNES, Defendant.**

**No. CV 98–7771 CBM (MANx).**

United States District Court, C.D. California.

March 3, 1999.

Peter A. Lindh, San Francisco, CA, for Plaintiff.

John Q. Quisenberry, Marnie C. Lambert, Brian S. Kabateck, Los Angeles, CA, for Defendant.

## ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

CONSUELO BLAND MARSHALL, District Judge.

The matter before the Court is Defendant's Motion to Dismiss the Complaint. On January 25, 1998, the parties came before the Court, the Honorable Consuelo B. Marshall, United States District Judge, presiding. Upon consideration of the papers submitted and the arguments of counsel, the Court grants Defendant's Motion and dismisses the Complaint without prejudice to re-filing in the proper court.

## I. BACKGROUND

This action for declaratory relief is brought pursuant to this Court's admiralty jurisdiction. Plaintiff, La Reunion Francaise, S.A., is a corporation organized under French law that engages in the business of providing marine insurance. Defendant, Brad Barnes, is a United States Citizen who resides in California.

On February 10, 1997, the parties entered into a one-year contract (subsequently renewed in February of 1998 for another one year term) for insurance on Defendant's 20–foot powerboat, valued at $64,000. In addition to insuring against property damage to the vessel, the policy also included coverage for liability and theft. The navigational limits of the policy are specifically described as including the "inland waters of California only." The policy further provides that the boat is to be stored ashore during the period of October 1 to March 31 of each year.

On May 15, 1998, while the policy was in force, Defendant's powerboat was stolen from its dry dock storage location. Defendant filed a claim for the total insured value of the boat. In response, Plaintiff filed this complaint for declaratory relief requesting that the contract be rescinded since Plaintiff had failed to disclose on his application that he previously had "a number of trucks, automobiles and motorcycles stolen." Plaintiff alleges that this was a material fact which, had it been disclosed, would have caused the company not to issue the policy or to charge a different premium.

On these facts, the Plaintiff seeks a declaration from this Court stating that: (1) a relationship of insurer and insured did not exist between Plaintiff and Defendant Barnes on May 15, 1998, the day on which the vessel was stolen; (2) the Plaintiff's policy No. 200/533/20143 does not afford coverage to the Defendant for the aforementioned theft; and (3) the policy was void ab initio due to the Defendant's failure to disclose his prior loss history.

■ On January 11, 1999, Defendant filed the instant Motion to Dismiss pursuant to Fed.R.Civ.P. 12(b)(6). Although the Motion does not explicitly mention Fed. R.Civ.P. 12(b)(1), Defendant also challenges Plaintiff's invocation of admiralty jurisdiction.[1]

## II. DISCUSSION

### A. Jurisdictional Basis in Admiralty

■ Generally, "a contract is within admiralty jurisdiction if its subject matter is maritime." *Royal Ins. Co. of America v. Pier 39 Ltd.*, 738 F.2d 1035, 1036 (9th Cir.1984). More specifically, a marine insurance policy is a "maritime contract" for purposes of admiralty jurisdiction. *See Scott & Co., Inc. v. Makah Development Corporation*, 496 F.2d 525, 526 (9th Cir. 1974). Thus, were this policy a traditional "marine insurance policy," (i.e. insurance covering the risks of navigation on navigable waters as defined hereinafter, or on the high seas) this Court would clearly have subject matter jurisdiction in admiralty.

Defendant challenges the invocation of admiralty jurisdiction because the policy's navigational limits cover the "inland waters of California only." Plaintiff bears the burden of establishing, by affidavits or other evidence, that subject matter jurisdiction does in fact exist. *See St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989). In order to determine whether this contract is governed by the law of admiralty, this Court must undertake a brief review of admiralty jurisprudence.

### 1. Development of Admiralty Jurisprudence

At English common law, and in this country at the time the Constitution was adopted, admiralty jurisdiction was understood to attach only when the contract's terms indicated that performance was to occur upon the high seas or inland bodies of water, such as bays, which were affected by the "ebb and flow of the tide." This rule promoted uniformity in the laws governing commerce and safety on the high seas. *See Adams v. Montana Power Co.*, 528 F.2d 437, 439 (9th Cir.1975). However, near the turn of the century, the Supreme Court held that it was not the ebb and flow of the tide, but rather the navigability of the waters for purposes of commerce that was the actual test for jurisdictional purposes. *Propeller Genesee Chief v. Fitzhugh*, 12 How. 443, 53 U.S. 443, 13 L.Ed. 1058 (1851).

The Ninth Circuit further refined this rule by adopting the contemporary "navigability-in-fact" standard. This modern interpretation, first formulated in *Adams v. Montana Power Co.*, holds that "admiralty jurisdiction need and should extend only to those waters traversed or susceptible of being traversed by commercial craft." *Adams v. Montana Power Co.*, 528 F.2d 437, 439 (9th Cir.1975); *See also Chapman v. United States*, 575 F.2d 147 (7th Cir.1978). The term "susceptible" as used in this context does not mean physically capable, but rather, likely. *Chapman*, 575 F.2d at 149.

### 2. Application of the "Navigability in Fact" Standard

Cases applying this rule have categorized many inland lakes and rivers as nonnavigable since they are not used as conduits of interstate or even intrastate trade. For example, the Ninth Circuit found Lake Shasta, a popular spot for pleasure boating, to be non-navigable stating that "the district court properly determined that it lacked admiralty jurisdiction over claims arising from incidents occurring on a nonnavigable waterway such as Lake Shasta." *Seven Resorts Inc. v. Cantlen*, 57 F.3d 771, 774 (9th Cir.1995).

Exhaustive research has failed to locate any case in the Ninth Circuit addressing the existence of admiralty jurisdiction over a policy with language similar to the one currently at issue. Plaintiff relies on *Aca-*

---

1. This Court may also raise the issue of subject matter jurisdiction sua sponte. *See California Diversified Promotions, Inc. v. Musick*, 505 F.2d 278, 280 (9th Cir.1974).

*dia Ins. Co. v. McNeil,* 116 F.3d 599 (1st Cir.1997) to bolster its contention that a dispute over a contract for an "inland waters only" insurance policy may be decided in a court of admiralty. The policy at issue in *Acadia* provided coverage for navigation on the "inland lakes and rivers in the States of Maine, New Hampshire, Vermont, New York and Massachusetts, *not to exceed 50 miles offshore.*" *Acadia,* 116 F.3d at 601 (emphasis added). The court concluded that this policy was an "ocean marine policy" governed by admiralty; however, the topography of the region covered by the policy, as well as the inclusion of offshore waters in the policy, distinguishes *Acadia* from the instant situation.

### 3. The "Wholly Maritime" Requirement and Exceptions

It is generally recognized that a contract must be wholly maritime in order to be cognizable in admiralty. *See Simon v. Intercontinental Transport,* 882 F.2d 1435, 1442 (9th Cir.1989). "Consequently, where a contract contains both maritime and non-maritime obligations, admiralty jurisdiction is generally denied." *Atlantic Mutual Ins. Co. v. Balfour Maclaine International Ltd.,* 968 F.2d 196, 199 (2nd Cir.1992). There are, however, two exceptions to this general rule. "First, admiralty may take jurisdiction of an entire contract if the nonmaritime obligations are merely incidental to the primary maritime nature of the contract (e.g. an ocean marine contract where the boat is stored in dry dock for part of the year)." *Simon,* 882 F.2d at 1442. "Second, where the nonmaritime obligations are substantial, admiralty may take jurisdiction over any maritime obligations which can be severed from the nonmaritime obligations and separately adjudicated without prejudice to the parties." *Id.*

Plaintiff failed to either argue or provide evidence to establish that the nonmaritime obligations of the contract are merely incidental to the maritime obli-

gations. It is also unlikely that this Court would be able to sever the obligations of the insurance contract into its maritime and nonmaritime portions. Plaintiff does not attempt to partition the obligations, perhaps implicitly recognizing the speculative and unwieldy nature of such a task. This Court will not attempt to do so either. *See Lucky–Goldstar, Int'l. (America) Inc. v. Phibro Energy International, Ltd.,* 958 F.2d 58, 60 (5th Cir.1992) (maritime and nonmaritime portions of contract found not severable where plaintiff had "filed a single claim for breach of contract, with no contention that it sued to recover only for the breach of the maritime aspects of the contract"). Therefore, after review of the insurance contract, the Court finds that there is no 'severable claim' that implicates admiralty jurisdiction.

## III. CONCLUSION

For the aforementioned reasons, Plaintiff has failed to prove that: (1) the policy is wholly maritime in nature; or (2) the nonmaritime obligation of this contract are merely incidental to its maritime obligations; or (3) that this Court can sever and separately adjudicate the maritime and nonmaritime obligations of the contract. Accordingly, Defendant's motion is granted and the case is dismissed for lack of subject matter jurisdiction.[2]

IT IS SO ORDERED.

---

**2.** Because this Court dismisses the Complaint for lack of subject matter jurisdiction, it does

not reach the merits of Defendant's Fed .R.Civ.P. 12(b)(6) arguments.