Hillman, J.
INTRODUCTION
The plaintiff brought this action alleging breach of the defendant’s duty to defend and indemnify its insured under a homeowner’s policy. This matter is before the court on the defendant’s motion for summary judgment pursuant to Mass.R.Civ.P. 56. Also before the court is the plaintiffs motion for summary judgment on Counts I and II of the complaint. For the reasons set forth below, the defendant’s motion for summary judgment is ALLOWED. Further, the plaintiffs motion for summary judgment is DENIED.
BACKGROUND
The following is taken from the summary judgment record. The undisputed facts, and any disputed facts viewed in the light most favorable to the non-moving parly, are as follows. On June 3, 1993, Debra Eastman (“Mrs. Eastman”) enrolled her daughter Cherish Ann Eastman (“Cherish”) in the Clara Barton Camp for Girls with Diabetes, Inc. (“the Camp”) by completing and executing a “1993 Camper Application.” The application included a "Parent’s Authorization and Release” which provided:
The undersigned, as parents or legal guardians of the above named minor child, hereby acknowledge that the activities, environs, and camping at the Clara Barton Camp for Girls with Diabetes, Inc. are potentially dangerous and there is risk of physical injury and, in consideration of acceptance by Clara Barton Camp, Inc. to use its premises and participate in its programs, hereby release and forever discharges, covenants not to sue, indemnifies and agrees to hold harmless Clara Barton Camp, Inc. and the Unitarian Universalist Women’s Federation, its agents, officers and employees and all other persons liable or claimed to be liable, from any and all claims, demands, damages, suits or injuries whatsoever arising from or related to Clara Barton Camp, Inc. and the Unitarian Universalist Women’s Federation attendance or participation in any of its programs.
On August 14, 1993, Cherish was seriously injured while bicycling at the Camp. At the time of her injury, the Camp and its officers and employees were insured for general liability by plaintiff ACE Fire Underwriters Insurance Company (“ACE”). Cherish filed suit to recover for her personal injuries against the Camp and its officers and employees, William Yutzy, IV, Kathryn Gregario-Palmer, Shana Page Hermans, Shelley Yea *208 ger and Maria Lang. The Camp and its officers and employees filed a third-party complaint against Mrs. Eastman for indemnity pursuant to the authorization and release contained in the June 3, 1993 camper application. Defendant Commerce Insurance Company (“Commerce") provided Homeowners Coverage to Mrs. Eastman and her husband Miles Eastman for the period 2/7/93-2/7/94 under Policy Number HM25411 (“the Policy”). The Policy provides personal liability coverage as follows:
If a claim is made or a suit is brought against an insured for damages because of bodily injury or property damage caused by an occurrence to which this coverage applies, we will:
1. pay up to our limit of liability for the damages for which the insured is legally liable; and
2. provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent.
The Policy further provides in relevant part:
2. Coverage E — Personal Liability, does not apply to: a. liability:
(1) for your share of any loss assessment charged against all members of an association, corporation or community of property owners;
(2) under any contract or agreement. However, this exclusion does not apply to written contracts:
(a) that directly relate to the ownership, maintenance or use of an insured location; or
(b) where the liability of others is assumed by the insured prior to an occurrence;
unless excluded in (1) above or elsewhere in this policy;
f. bodily injury to you or an insured within the meaning of part a. or b. of “insured” as defined.
The Policy defines “insured” as “you and residents of your household who are: a. your relatives; or b. other persons under the age of 21 and in the care of any person named above.”
Mrs. Eastman sought a defense and indemnity from Commerce with respect to the third-party complaint, but by letter dated May 26, 2000, Commerce refused to provide a defense or indemnity on the ground that Section 2f of the Policy excluded coverage for claims resulting from bodily injury to an insured. Mrs. Eastman was thus forced to incur expenses in defending the third-party complaint.
ACE and Mrs. Eastman settled the personal injury action for $500,000 through mediation. Mrs. Eastman executed a $618,107.60 Agreement for Judgment in favor of the third-party plaintiffs, with $500,000 representing the settlement payment to Cherish and the remainder representing the cost of the third-party plaintiffs’ defense. On June 7, 2001, Mrs. and Mr. Eastman assigned all of their rights against Commerce under the Policy to ACE and the third-party plaintiffs in exchange for a covenant not to execute upon the judgment against Mrs. Eastman.
On June 29, 2001, ACE, as subrogated judgment creditor and assignee of Mrs. Eastman’s rights under the Policy, sent Commerce a demand letter pursuant to Chapter 93A demanding satisfaction of the judgment and reimbursement of Mrs. Eastman’s expenses in defending the third-party action. However, by letter dated July 26, 2001, Commerce denied liability under Chapters 93A and 176D.
Thereafter, on October 15, 2001, ACE filed the present action against Commerce alleging breach of the Policy in Count 1, seeking to reach and apply the Policy pursuant to G.L.c. 214, §3(9) in Count II, and alleging unfair claim settlement practices in violation of Chapters 93A and 176D in Count III. Commerce now moves for summary judgment on all counts of the complaint and ACE cross-moves for summary judgment on Counts I and II.
DISCUSSION
Summary judgment will be granted where there are no material facts in dispute and the moving party is entitled to judgment as a matter of law. Mass.R.Civ.P. 56(c); Casseso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community National Bank v. Dawes, 369 Mass. 550, 553 (1976). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue, and that the moving party is entitled to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). The moving party may satisfy this burden either by submitting affirmative evidence that negates an essential element of the opponent’s case or by demonstrating that the opposing party has no reasonable expectation of proving an essential element of his case at trial. Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). Once the moving party establishes the absence of a triable issue, the party opposing the motion must respond and allege specific facts establishing the existence of a material fact in order to defeat the motion. Pederson v. Time, Inc., 404 Mass. at 17. If the moving party submits evidence that indicates the plaintiff cannot demonstrate the essential elements of a claim, summary judgment should be granted. See Kourouvacilis v. General Motors Corp., 410 Mass. at 711-12.
The construction of the language of an insurance contract is a matter of law for the court. Ruggerio Ambulance Service, Inc. v. National Grange Mut. Ins. Co., 430 Mass. 794, 797 (2000); Dorchester Mut. Fire Ins. Co. v. First Kostas Corp., Inc., 49 Mass.App.Ct. 651, 653 (2000), rev. den., 433 Mass. 1102 (2001). Exclusions from coverage must be strictly construed, and any ambiguity in an exclusion must be construed against the insurer. Preferred Mut. Ins. Co. v. Gamache, 426 Mass. 93, 94 (1997); Hakim v. Massa *209 chusetts Insurers’ Insolvency Fund, 424 Mass. 275, 282 (1997). See also Hazen Paper Co. v. United States Fidelity & Guar. Co., 407 Mass. 689, 700 (1990) (stating that if there are two rational interpretations of policy language, insured is entitled to benefit of the one that is more favorable to it). Nonetheless, where the exclusionary language is unambiguous it must be given its intended effect. Commerce Ins. Co. v. Betty Caplette Builders, Inc., 420 Mass. 87, 93 (1995).
The critical question is whether Section 2f of the Policy, commonly known as the “household exclusion,” applies to a third-party claim against an insured seeking indemnification for the personal injury of a household member.[2] “Bodily injury” as defined by the Policy means “bodily harm, sickness or disease, including required care, loss of services and death that results.” The purpose of the household exclusion is to exclude the risk of collusive intrafamily claims, and such an exclusion does not violate public policy. See Hahn v. Berkshire Mut. Ins. Co., 28 Mass.App.Ct. 181, 185 (1989). It is thus clear that Mrs. Eastman would have no coverage under the Policy for a direct claim for bodily injury brought against her by Cherish. ACE argues that the household exclusion is ambiguous because it does not expressly exclude third-party claims. There is no Massachusetts authority with respect to the application of the household exclusion to a third-party indemnity claim against an insured. However, two Superior Court decisions have concluded that the household exclusion bars a claim for contribution against an allegedly negligent insured because allowing such a claim would be inconsistent with the objective of barring coverage for personal injury to an insured. See Kalus v. Merrimack Mut. Fire Ins. Co., 6 Mass. L. Rptr. 292, 1996 Mass.Super. LEXIS 78 at *7 (King, J.); Horace Mann Ins. Co. v. Doe, 2 Mass. L. Rptr. No. 8, 148, 150 (June 27, 1994) (Lenk, J.). Accord Parker v. State Farm Mut. Automobile Ins. Co., 282 A.2d 503, 508-09 (Md.Ct.App. 1971); Groff v. State Farm Fire & Cas. Co., 646 F.Sup. 973, 974-75 (E.D.Pa. 1986).
Similarly, there is authority in other jurisdictions that the household exclusion bars a tort-based indemnity claim against an insured who is vicariously liable because such a claim is derived solely from the bodily injury claim of the injured person. See George v. White Consolidated Indus., Inc., 721 So.2d 573, 575-77 (La.App.2d Cir. 1998); Knoblock v. Prudential Prop. & Cas. Ins. Co., 615 A.2d 644, 646-47 (N.J.Super.A.D. 1992). But see Campanile v. State Farm Gen. Ins. Co., 558 N.Y.S.2d 203, 204-05 (N.Y.A.D. 3d Dept. 1990), aff'd., 573 N.Y.S.2d 463 (N.Y. 1991) (findinghousehold exclusion ambiguous and interpreting it against insurer to cover equitable indemnification claim against joint tortfeasor). ACE contends, however, that contribution and tort-based indemnity claims are fundamentally different from the indemnity claim in the present case which does not derive solely from the personal injury to the insured but rather, derives from the contractual agreement between Mrs. Eastman and the third-party plaintiffs. See Greater Boston Cable Corp. v. White Mountain Cable Constr. Corp., 414 Mass. 76, 79 (1993) (distinguishing between tortbased indemnity and contract-based indemnity). ACE thus urges that its claim is a contract-based claim and not a claim for damages because of bodily injury to the insured which is precluded by the household exclusion.
Regardless of how the claim is characterized, the potential for collusion is the same in a third-party claim as in a direct claim by a household member against an insured: if the policy provides coverage, the insured has no incentive to defeat or reduce the indemnity claim against her. See Groff v. State Farm Fire & Cas. Co., 646 F.Sup. at 975. In the present case, although the indemnity agreement was executed two months before the injury at issue and is thus not collusive in the harshest sense of the word, Mrs. Eastman stipulated to a substantial judgment against her in the third-party action and then assigned her rights to ACE and the third-party plaintiffs in exchange for their agreement not to execute upon the judgment against her. An insured should not be able to do indirectly what it cannot do directly under the policy for which it bargained. See Kalus v. Merrimack Mut. Fire Ins. Co., 6 Mass. L. Rptr. 292, 1996 Mass.Super. LEXIS 78 at * 6. This Court concludes that the household exclusion is unambiguous and encompasses the indemnity claim against Mrs. Eastman. Accordingly, Commerce did not breach the Policy in refusing to defend or indemnify her.
Further, this Court is not persuaded by ACE’s argument that applying the household exclusion to its contractual indemnity claim violates public policy and/or the reasonable expectation of insureds. The barring of claims against an insured for the injury of a household member does not violate Massachusetts public policy. See Hahn v. Berkshire Mut. Ins. Co., 28 Mass.App.Ct. at 185.[3] An objectively reasonable insured reading the Policy language would not expect to be able to obtain coverage via a third-party indemnity claim where the Policy so clearly prohibits a direct claim. Notwithstanding that parental indemnity agreements may be common for children’s recreational activities, the court’s interpretation does not negate the very coverage that the policy purports to provide, rendering the coverage illusory. Cf. Liberty Mut. Ins. Co. v. Tabor, 407 Mass. 354, 358 (1990) (concluding that motor vehicle liability policy that excluded coverage where insured was negligent was void). Accordingly, Commerce is entitled to judgment as a matter of law on Count I of the complaint.
Commerce is also entitled to summary judgment on Count II, which seeks to reach and apply the Policy. Chapter 214, Section 3(9) gives the Superior Court jurisdiction over actions “to reach and apply the obli *210 gation of an insurance company to a judgment debtor . . . under [any] policy insuring a judgment debtor against liability for loss or damage on account of bodily injury ... in satisfaction of a judgment covered by such policy . . .” G.L.c. 214, §3(9) (2000). In such an action, an insurer may avail itself of any defense which it would have against the insured, and where the policy provides no coverage, the insurer has no obligation to pay a judgment against its insured. Rideout v. Crum & Foster Commercial Ins., 417 Mass. 757, 760 (1994). Thus, Commerce is entitled to prevail on Count II of ACE’s complaint.
Finally, Commerce moves for judgment as a matter of law on Count III of the complaint, which alleges unfair settlement practices under Chapter 93A and Chapter 176D, Section 3(9) based on the refusal to defend and indemnify Mrs. Eastman. The record does not disclose any other alleged unfair or deceptive acts by Commerce. Given this Court’s conclusion that there was no coverage under the Policy for the indemnity claim, Commerce did not engage in unfair claim settlement practices. See Vaiarella v. Hanover Ins. Co. v. Hanover Ins. Co., 409 Mass. 523, 530 (1991); Prudential Prop. & Cas. Ins. v. Allaire, 25 Mass.App.Ct. 159, 162 (1987), rev. den., 401 Mass. 1104 (1988).
ORDER
For the foregoing reasons, it is hereby ORDERED that the defendant’s motion for summary judgment be ALLOWED and that the plaintiffs motion for summary judgment on Counts I and II be DENIED.

ACE’s argument that exception (b) to exclusion 2a(2) expressly provides coverage for contractual indemnity is misplaced. Exclusion clauses subtract from coverage rather than grant it. Bond Bros. v. Robinson, 393 Mass. 546, 550 (1984); Transamerica Ins. Co. v. KMS Patriots, L.P., 52 Mass.App.Ct. 189, 196 n.8 (2001). The fact that 2a(2) of the Policy does not exclude the claim at issue does not resolve whether said claim is excluded under the household exemption in 2f.

The Legislature, if it so chooses, may determine otherwise. See, e.g., Acadia Ins. Co. v. McNeil, 116 F.3d 599, 604 (1st Cir. 1998) (discussing New Hampshire statute stating that no liability policy shall contain exclusion precluding coverage for intra-family claims); West American Ins. Co. v. Bedwell, 715 N.E.2d 759, 762-63 (Ill.App. 3d Dist.), rev. den., 723 N.E.2d 1170 (Ill. 1999) (discussing Illinois statute providing that household exclusion in motor vehicle insurance policy does not apply when third party acquires a right of contribution against a member of the injured person’s family).