Therrien v. Sullivan                    CV-04-031-SM  03/14/05
                 UNITED STATES DISTRICT COURT

                    DISTRICT OF NEW HAMPSHIRE


Robert Therrien,
     Plaintiff

     v.                                      Civil No. 04-31-SM
                                             Opinion No. 2005 DNH 040
Mark F. Sullivan,
     Defendant


                          O R D E R


     In 1996, plaintiff, Robert Therrien, was charged with one

count of aggravated felonious sexual assault, for having

allegedly forced his first-grade daughter to perform fellatio on

him.  Therrien retained the defendant, Mark Sullivan, Esq., to

represent him in defending against that charge.  Following a jury

trial, Therrien was convicted and sentenced to seven and one-half

to fifteen years in state prison.  That conviction was affirmed

on appeal.


     Subsequently, however, Therrien moved for, and was granted,

a new trial on grounds that Sullivan provided constitutionally

deficient representation.  In granting Therrien's requested

relief, the state court concluded that Sullivan failed to file

appropriate pretrial motions in limine seeking to prevent the State from introducing evidence of Therrien's prior bad acts, and failed to properly object to the introduction of that prejudicial evidence at trial.

Therrien then filed this civil suit against Sullivan, invoking this court's diversity jurisdiction. In the sole count of his complaint, Therrien asserts claims for "legal malpractice, negligence, breach of contract, fraud and other [unspecified] causes of action arising out of [Sullivan's] deficient representation of Plaintiff." Amended complaint at para. 1. Sullivan moves to dismiss Therrien's claims, saying his complaint fails to state a claim upon which relief may be granted and that those claims are barred by the pertinent statute of limitations. In the alternative, Sullivan moves this court to certify the potentially dispositive statute of limitations question to the New Hampshire Supreme Court. Therrien objects.

## Standard of Review

When ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the court must "accept as true the well-pleaded factual

allegations of the complaint, draw all reasonable inferences therefrom in the plaintiff's favor and determine whether the complaint, so read, sets forth facts sufficient to justify recovery on any cognizable theory."  Martin v. Applied Cellular Tech., 284 F.3d 1, 6 (1st Cir. 2002).  Dismissal is appropriate only if "it clearly appears, according to the facts alleged, that the plaintiff cannot recover on any viable theory."  Langadinos v. American Airlines, Inc., 199 F.3d 68, 69 (1st Cir. 2000).

Notwithstanding this deferential standard of review, however, the court need not accept as true a plaintiff's "bald assertions" or conclusions of law.  See Resolution Trust Corp. v. Driscoll, 985 F.2d 44, 48 (1st Cir. 1993) ("Factual allegations in a complaint are assumed to be true when a court is passing upon a motion to dismiss, but this tolerance does not extend to legal conclusions or to 'bald assertions.'") (citations omitted).  See also Chongris v. Board of Appeals, 811 F.2d 36, 37 (1st Cir. 1987).

## Factual Background

The relevant factual background is described in detail in the New Hampshire Supreme Court's opinion affirming Therrien's criminal conviction. State v. Therrien, 144 N.H. 433 (1999) ("Therrien I"). Only an abbreviated recitation of the pertinent facts is necessary here.

While living in Portsmouth, New Hampshire, Therrien allegedly forced his first-grade daughter to perform fellatio on him. Soon thereafter, the family moved to Maine. In 1995, the victim informed her mother about the assault that had allegedly occurred earlier in Portsmouth. Therrien was charged with that assault, but before he was brought to trial in New Hampshire, he was tried for other alleged sexual assaults against his daughter in Maine. Therrien was acquitted of those charges.

At his subsequent trial on the Portsmouth charge, the jury was allowed to hear evidence of Therrien's alleged sexual assaults against his daughter in Maine. Defense counsel was not, however, permitted to introduce evidence that Therrien had been acquitted of those charges. Additionally, over defense counsel's

4

objection, the jury was allowed to hear testimony from the victim's social worker, who testified that Therrien had abused the victim until she was thirteen years old.  In March of 1997, Therrien was convicted of aggravated felonious sexual assault. On April 25, 1997, he was sentenced to serve seven and one-half to fifteen years in prison.

On direct appeal to the New Hampshire Supreme Court, Therrien, represented by different counsel, asserted that the trial court erred in admitting evidence of other bad acts (i.e., the alleged sexual assaults that occurred in Maine), without permitting him to introduce evidence that he had been acquitted of those charges.  He also challenged the trial court's decision to allow the victim's therapist to testify about multiple incidents of abuse.  The state supreme court affirmed Therrien's conviction, concluding that the victim's testimony about sexual assaults that allegedly took place in Maine amounted to harmless error.  It also concluded that Therrien failed to preserve for appellate review his objections to: (1) the court's ruling precluding introduction of evidence of his acquittal of the Maine

5

charges; and (2) introduction of the social worker's testimony. See Therrien I.

Therrien then sought collateral relief in the state trial court, moving for a new trial. He asserted that he had been denied effective assistance of counsel at his trial. The superior court denied that motion, concluding that counsel provided constitutionally adequate representation. The state supreme court vacated that holding, reasoning that the trial court should have conducted an evidentiary hearing on the matter prior to ruling. The case was transferred to a new judge, an evidentiary hearing was held, and the court determined that Sullivan did, in fact, provide constitutionally deficient representation:

> The court finds that Sullivan's representation of defendant at trial was deficient, as he failed to properly prepare for, attempt to exclude, try to mitigate, or even preserve for appeal the issue of defendant's inherently prejudicial prior bad acts.

State v. Therrien, No. 96-S-541 (N.H. Super. Ct. May 7, 2002) ("Therrien II"). Accordingly, the court vacated Therrien's conviction and granted his motion for a new trial. The State,

however, declined to re-prosecute Therrien, perhaps because he had already served approximately five years in prison.

On January 28, 2004, Therrien filed this diversity action against Sullivan, asserting that he is actually innocent of the charges brought against him and saying that Sullivan's deficient representation proximately caused his allegedly wrongful conviction and incarceration.[1]  As noted above, Sullivan moves to dismiss Therrien's one-count complaint on grounds that it is barred by the applicable limitations period.

**Discussion**

I.   Essential Elements of a Viable Claim.

Under New Hampshire law, a plaintiff in a traditional civil legal malpractice case must prove:

> (1) that an attorney-client relationship existed, which
> placed a duty upon the attorney to exercise reasonable
> professional care, skill and knowledge in providing
> legal services to that client; (2) a breach of that

---

[1]     It is appropriate, in this context, to note that no court has determined that Therrien was actually innocent of the criminal charge against him; his conviction was set aside on other grounds, and the charges were then dropped as a matter of prosecutorial discretion.

duty; and (3) resultant harm legally caused by that breach.

Furbush v. McKittrick, 149 N.H. 426, 432 (2003). In a criminal legal malpractice action - one in which the plaintiff asserts that counsel provided deficient representation in a criminal proceeding - the plaintiff must also demonstrate that he or she was "actually innocent" of the conduct giving rise to the criminal charges.

> While [a criminal malpractice claim] requires all the proof essential to a civil malpractice claim, a criminal malpractice action will fail if the claimant does not allege and prove, by a preponderance of the evidence, actual innocence. It is not sufficient for a claimant to allege and prove that if counsel had acted differently, legal guilt would not have been established. As a matter of law, the gateway to damages will remain closed unless a claimant can establish that he or she is, in fact, innocent of the conduct underlying the criminal charge.

Mahoney v. Shaheen, Cappiello, Stein & Gordon, P.A., 143 N.H. 491, 496 (1999) (emphasis in original).

Here, Therrien's complaint plainly sets forth each of the essential elements of a viable claim for criminal legal malpractice. Whether he can actually prove each of those

8

elements, and whether he can demonstrate a causative link between Sullivan's conduct and Therrien's criminal conviction, see, e.g., Carbone v. Tierney, __ N.H. __, 864 A.2d 308 (2004), are not issues that are appropriate for resolution on a motion to dismiss. See, e.g., Gorski v. N.H. Dep't of Corr., 290 F.3d 466, 472 (1st Cir. 2002) ("The issue presently before us, however, is not what the plaintiff is required ultimately to prove in order to prevail on her claim, but rather what she is required to plead in order to be permitted to develop her case for eventual adjudication on the merits.") (emphasis in original).

II.  Statute of Limitations and Tolling.

Malpractice actions are governed by N.H. Rev. Stat. Ann. ("RSA") 508:4, which establishes a three-year limitations period for all personal injury actions. See Furbush, 149 N.H. at 430. "A cause of action arises once all the necessary elements are present." Shaheen, Cappiello, Stein & Gordon, P.A. v. Home Ins. Co., 143 N.H. 35, 40 (1998) (citation and internal punctuation omitted). Accordingly, a cause of action for legal malpractice accrues when "an attorney breaches a professional duty and damages occur as a result," Id. (emphasis in original). So, an

9

action to recover for alleged criminal legal malpractice must be brought within three years of that coincidence.

In this case, Sullivan's breach of professional duty consisted of his failure to adequately prepare for, and address at trial, the prior bad acts evidence offered against Therrien. See Complaint at para. 7. See also Therrien II. That alleged malpractice first caused harm to Therrien when he was convicted (wrongly, according to Therrien) of aggravated felonious sexual assault. The harm associated with Sullivan's alleged malpractice was, therefore, manifest by December 13, 1999, when the New Hampshire Supreme Court affirmed Therrien's conviction.

Therrien was certainly aware of his potential malpractice claim against Sullivan, at the very latest, when Therrien filed his motion for a new trial, on March 2, 2000. In that motion, Therrien alleged, among other things, that "The prejudice from trial counsel's deficient performance is palpable. . . . If proper arguments had been made by [Attorney Sullivan], there is a reasonable probability that either the verdict would have been different, or that Mr. Therrien's conviction would have been

10

reversed on appeal." Exhibit A to defendant's memorandum, Therrien's motion for new trial at 19. Plainly, by that time, Therrien knew or believed that: (1) he was actually innocent of the charge against him; (2) he was, nevertheless, convicted of that charge; and (3) Attorney Sullivan had not properly objected to (or preserved issues for appeal related to) the admission of prejudicial bad acts evidence, preclusion of evidence of the Maine acquittals, and admission of the social worker's testimony. Thus, he was aware of both Sullivan's alleged malpractice and the causal link between that alleged malpractice and his wrongful conviction.

In short, once his conviction was affirmed on appeal (and certainly by March 2, 2000, when he filed his motion for a new trial), Therrien knew his attorney had allegedly "breach[ed] a professional duty and damages occur[red] as a result." Home Ins. Co., 143 N.H. at 40 (emphasis supplied). It would seem apparent, then, that Therrien's criminal malpractice suit, which was filed on January 28, 2004, is untimely under New Hampshire's three-year limitations period.

11

But Therrien asserts that the limitations period did not begin to run (or should have been tolled) until May 7, 2002, when the state trial court determined that Sullivan's representation had been constitutionally deficient and granted his motion for a new trial. Only then, says Therrien, was he legally capable of establishing an essential element of his criminal malpractice claim against Sullivan: his actual innocence of the crime of aggravated felonious sexual assault. Before his conviction was set aside, he says, principles of collateral estoppel would have precluded him from denying that he was guilty of the criminal charge. That is to say, until his conviction was set aside, he was legally prevented from proving an essential element of his criminal malpractice claim: that he was actually innocent of the charges against him.

Accordingly, says Therrien, only after his conviction was vacated and his motion for new trial granted, were all of the legal bars to his malpractice claim against Sullivan removed. It naturally follows, then, that he claims it was at that point that his malpractice cause of action actually "accrued," and the time in which to file began to run. Alternatively, he says the

applicable limitations period should be tolled until the collateral estoppel bar to his proving actual innocence was lifted (when his motion for new trial was granted, on May 7, 2002).

Although the New Hampshire Supreme Court has yet to address the legal question presented by this case, numerous other state courts have wrestled with the issue. Among those courts, there is a decided lack of agreement regarding when a criminal defendant's legal malpractice claim actually accrues. Some courts have adopted what has become known as the "one track approach," holding that a criminal malpractice action does not accrue until the defendant has obtained collateral relief from his or her conviction. The Supreme Court of Minnesota has, for example, observed that until appellate (or collateral) relief is obtained with regard to the underlying conviction, a claim for criminal malpractice cannot survive a motion to dismiss. Principles of collateral estoppel would preclude a criminal defendant from establishing his or her innocence of the underlying crime - an essential element of the malpractice claim.

> Our holding today is a recognition that as long as a valid criminal conviction is in place a legal malpractice cause of action based on a defense counsel's ineffective assistance cannot withstand a Rule 12.02(e) motion to dismiss.
>
> * * *
>
> Additionally, by precluding claims from proceeding in which a plaintiff's criminal conviction has not been overturned and will likely never be overturned, our decision comports with another fundamental policy of the statute of limitations, which is to permit the judicial system to husband its limited resources. Therefore, in this case, the policy against allowing a defendant to collaterally attack a valid criminal conviction in a subsequent civil proceeding outweighs the policy of preventing stale claims.

Noske v. Friedberg, 670 N.W.2d 740, 745-46 (Minn. 2003) (citation and internal punctuation omitted). See also Canaan v. Bartee, 72 P.3d 911, 921 (Kan.) ("We hold that before [a criminal defendant] may sue his attorneys for legal malpractice he must obtain postconviction relief"), cert. denied, 540 U.S. 1090 (2003); Adkins v. Dixon, 482 S.E.2d 797, 801 (Va. 1997) ("Since successful termination of [post-conviction collateral challenges to the conviction] is a part of [plaintiff's] cause of action, he has no right of action until that time and, thus, the statute of limitations does not begin to run until termination of the post-conviction proceeding."); Stevens v. Bispham, 851 P.2d 556, 566

14

(Or. 1993) ("We hold that, in order for one convicted of a criminal offense to bring an action for professional negligence against that person's criminal defense counsel, the person must, in addition to alleging a duty, its breach, and causation, allege 'harm' in that the person has been exonerated of the criminal offense through reversal on direct appeal, through post-conviction relief proceedings, or otherwise.").

Other courts, however, have adopted a "two track approach," concluding that a malpractice cause of action accrues as soon as the criminal defendant becomes aware of his or her attorney's negligence and the resulting injury (typically, not later than the date on which the criminal defendant filed his or her petition seeking collateral relief from the conviction). So, for example, the Colorado Supreme Court has held:

> [A]n underlying criminal appeal or motion for postconviction relief does not affect the accrual for related legal malpractice claims. Similarly, such criminal matters do not require tolling of the statute of limitations of related malpractice claims. Criminal defendants must file their malpractice actions within two years of discovering the attorney's negligence and the resulting injury. In the event that a particular criminal defendant must obtain appellate relief to avoid dismissal of a pending malpractice action, or if proceeding with a malpractice action would jeopardize

15

> the criminal defendant's rights, the trial court may
> stay the malpractice action pending resolution of the
> criminal case.

Morrison v. Goff, 91 P.3d 1050, 1058 (Colo. 2004).  See also

Ereth v. Cascade County, 81 P.3d 463, 469 (Mont. 2003) ("[W]e

hold that a criminal defendant must file a malpractice complaint

within three years of discovering the act, error or omission. . .

[W]ith the claim preserved, the defendant can seek a stay in the

civil suit until the criminal case is resolved."); Gebhardt v.

O'Rourke, 510 N.W.2d 900, 904 (Mich. 1994)("[Plaintiff] knew that

she had a possible claim against [her criminal defense counsel]

when she moved for a new trial.  At this time, she was able to

allege the elements of a malpractice claim.").


To be sure, a cause of action "accrues" when all elements of

that claim are present.  Whether a plaintiff can actually prove

each of those essential elements is, typically, not relevant for

purposes of determining when the pertinent limitations period has

begun to run.  Consequently, the New Hampshire Supreme Court

might well adopt the "two track approach," concluding that the

running of the limitations period is not affected by the fact

that a defendant in a criminal malpractice action can assert, by

16

way of affirmative defense, that the plaintiff is collaterally estopped from proving one or more essential elements of his or her malpractice claim.

On the other hand, there might well be sound policy reasons that counsel in favor of recognizing that a criminal defendant's malpractice cause of action does not accrue (or that the limitations period is tolled) until the criminal defendant obtains collateral relief from his or her conviction. Concluding otherwise might effectively encourage every defendant convicted of a crime to immediately file a malpractice action against his or her attorney (and then seek a stay of that proceeding), to protect against losing the cause of action before he or she obtains collateral relief from the underlying conviction. That, in turn, would likely have an adverse impact on the number of attorneys willing to represent criminal defendants. It would also put substantial pressure on the State's limited judicial resources.

Resolving such fundamental questions of state law is a role best left to the state courts. When a federal court is called

17

upon to apply state law, it must "take state law as it finds it: 'not as it might conceivably be, some day; nor even as it should be.'" Kassel v. Gannett Co., 875 F.2d 935, 950 (1st Cir. 1989) (quoting Plummer v. Abbott Laboratories, 568 F. Supp. 920, 927 (D.R.I. 1983)). When state law has been authoritatively interpreted by the state's highest court, this court's role is straightforward: it must apply that law according to its tenor. See Kassel, 875 F.2d at 950. When the signposts are somewhat blurred, the federal court may assume that the state court would adopt an interpretation of state law that is consistent with logic and supported by reasoned authority. See Moores v. Greenberg, 834 F.2d 1105, 1107 n.3 (1st Cir. 1987). However, this court should be, and is, hesitant to blaze new, previously uncharted state-law trails. Accordingly, when a dispositive legal question is novel and the state's law in the area is unsettled, certification is often appropriate. See Lehman Bros. v. Schein, 416 U.S. 386, 391 (1974); Arizonans for Official English v. Arizona, 520 U.S. 43, 76 (1997). See also Acadia Ins. Co. v. McNeil, 116 F.3d 599, 605 (1st Cir. 1997).

An expansive reading of New Hampshire's statutory limitations period or the State's controlling principles of equitable tolling, particularly when resolution of a novel question of New Hampshire law implicates substantial public policy concerns, is a realm best occupied by the New Hampshire Supreme Court. Because that court has yet to address the discrete issue presented in this case, and because it is unclear how it would likely resolve that issue in the context of the facts as pled, the fairest and most prudent course of action at this stage is to certify the question. Otherwise, the case would be dismissed (perhaps wrongly) and the Court of Appeals would likely have to revisit the question of certification. Alternatively, if the case were not dismissed, extended and expensive litigation would proceed, perhaps unnecessarily, on a claim of questionable viability. Neither situation represents an efficient use of judicial, or the litigants', resources.

## Conclusion

Defendant's motions to dismiss (documents no. 3 and 7) are denied. His motion to reconsider denial of motion to dismiss or in the alternative for certification to the New Hampshire Supreme Court (document no. 11) is granted in part and denied in part.[2] To the extent it seeks certification to the New Hampshire Supreme Court of the controlling legal issues presented in this case, the motion is granted. In all other respects, it is denied.

The court proposes to certify the following questions of law to the New Hampshire Supreme Court:

1.   In the context of a civil action for criminal legal malpractice, see, e.g., Mahoney v. Shaheen, Cappiello, Stein & Gordon, P.A., 143 N.H. 491 (1999), when does a criminal defendant's cause of action against his or her defense counsel accrue?

2.   If the cause of action for criminal legal malpractice accrues upon the criminal defendant's discovery of the attorney's alleged negligence and the resulting harm, is the pertinent state limitations period tolled until the criminal defendant obtains collateral relief from

---

[2]   For procedural reasons, the court's original ruling on defendant's motion to dismiss (document no. 7), issued by the Magistrate Judge, was vacated after defendant filed his motion to reconsider or, in the alternative, to certify. Accordingly, both the motion to dismiss and the motion to reconsider are, technically, ripe for review.

20

> his or her underlying criminal conviction (thereby avoiding estoppel bars to proving actual innocence)?

See generally N.H. Supr. Ct. R. 34. If either party objects to the form of the questions the court proposes to certify, a written objection, along with suggested alternatives, shall be filed on or before **April 8, 2005.** The court proposes to submit to the Supreme Court, as its statement of facts, the facts as presented in this order. If either party objects or wishes the court to supplement that statement of facts, that party shall submit an objection and/or proposed statement of supplemental facts by **April 8, 2005.** The parties should, of course, bear in mind that because defendant's pending motion is one to dismiss, the court must assume that all properly alleged facts in plaintiff's amended complaint (document no. 6) are true.

**SO ORDERED.**

_____
Steven J. McAuliffe
Chief Judge

March 14, 2005

cc:  Richard Bell, Esq.
     Sven D. Wiberg, Esq.